STUDERUS OIL COMPANY, INC., PROSECUTOR, v. CITY OF JERSEY CITY AND ANTHONY J. BOTTI, JUDGE OF THE FIRST CRIMINAL COURT OF JERSEY CITY, RESPONDENTS.

Argued January 20, 1942—Decided April 13, 1942.

Before Justices BODINE, PERSKIE and PORTER.

For the prosecutor, *Sher & Sher* (*Saul Sher,* of counsel).

For the respondents, *Charles A. Rooney* (*Edward A. Malone,* of counsel).

The opinion of the court was delivered by .

PERSKIE, J.   Prosecutor challenges the propriety of the judgment of conviction against it in the First Criminal Court

of Jersey City, upon a complaint of the inspector of the Bureau of Combustibles of Jersey City, which charged that, on March 17th, 1941, it was the owner of a tank wagon which it used for the "transportation of oil" within the corporate limits of Jersey City without having secured a permit for so doing, "contrary to and in violation of paragraph 6, chapter 3, paragraph 16 of the Rules and Regulations of the Board of Fire Commissioners of Jersey City," passed on April 3d, 1907, pursuant to the provisions of "C. 249, *Pamph. L.* 1906, p. 526, now *N. J. S. A.* 40:174-120."

The facts which give rise to the challenge are free from substantial dispute.

Prosecutor is engaged in the retail business of selling fuel oils, graded as numbers 2, 5 and 6. Its place of business is in the Town of Kearny, New Jersey, where it maintains its storage tanks, garages, trucks, tank wagons and equipment. It makes deliveries of its products to its customers in some 250 municipalities embraced within the territory "from the Raritan River up to the New York State line." It uses between six and twenty of its trucks or tank wagons, depending upon the season of the year.

Prosecutor neither maintains an office, nor keeps its products, nor its equipment in the City of Jersey City. The only times its trucks and tank wagons are in Jersey City are when they are used for the purpose of making deliveries of oil to prosecutor's customers in Jersey City and when the trucks and tank wagons are used for transporting oil through the city.

In the course of its business prosecutor admittedly did use, as charged, one of its tank wagons for the "transportation of oil" (grade number 6), to one of its customers in the City of Jersey City without having first secured a permit, as allegedly required, for so doing.

Let us briefly analyze the legislation (state and local) upon which the complaint, proofs and conviction were based.

*State Legislation:* Chapter 249, *Pamph. L.* 1906, p. 526 ("An act to create the office of inspector of combustibles and fire risks in cities of the first class and to define the duties thereof"), now *N. J. S. A.* 40:174-120, provides as follows:

Paragraph 1 provides for the creation of an office in the

fire department of cities of the first class to be known as the inspector of combustibles and fire risks (hereinafter referred to as inspector), for the appointment of a qualified person to such office, and defines the powers and duties of such officer.

Paragraph 2 provides that the inspector, and those acting under and for him, shall have the power and authority to enter "any house, store, factory or other building, and upon any lot, yard or land situated within the limits thereof" within the time therein prescribed, "to examine the same, the contents thereof or the purposes for which it is being used * * *."

Paragraph 3 provides that the inspector "shall keep a record of such inspections, statements and reports" (authorized under paragraph 2), keep and complete a record of all "houses, stores, factories and other buildings," the "construction" thereof, the "use" to which the same is put, the "nature" of the business there conducted, the "contents" thereof, the "location" of any "combustibles or explosive materials" therein, or which may be on the "premises" surrounding, adjacent or connected therewith, and the "mode, manner or method of storing or keeping the same * * *."

Paragraph 4 provides that "no person * * * or corporation shall have, keep, cause or permit to be kept, *in any building or in or on any property situated* (italics ours) in any city of the first class any gunpowder, * * * or blast oil * * * petroleum (either crude or refined) * * * without first obtaining from the inspector * * * a permit so to do;" it further provides that the inspector shall have the "power and authority" and it shall be his duty to enforce or assist in enforcing "any and all ordinances" of the city relating to "fires, explosives and combustibles" and to report to authorities all violations, &c.

Paragraph 5 provides that the penalty for violating any provisions of the act, or any of the terms of any permit issued in conformity therewith shall be a fine of $25 for the first offense and $25 for every day thereafter so long as the violation continues or exists.

Paragraph 6 provides that all inconsistent acts therewith are repealed but contains the saving clause that this act shall

not be construed to diminish or affect any of the powers, authority or responsibilities of any other board, body or official of any city.

*Local Legislation:* The City of Jersey City, one of the two cities of the first class in this state, on April 3d, 1907, adopted a comprehensive set of rules and regulations concerning, among other things, the transportation of inflammable and volatile oils.

Paragraph 16 of chapter 3 (Transportation) of part 6, provides that: "The owner or driver of any tank wagon shall secure a permit from the inspector covering the use of same, and the application for this permit shall state the name of the owner, the size of the tank, the oil storage station at which the tank wagon will ordinarily be filled, its individual number, and the location of the premises provided for the storage of the tank wagon at night."

Section 1 of part 10 provides for penalties in exactly the same words as set down in paragraph 5 of the act of 1906, *supra, N. J. S. A.* 40:174-124.

Section 2 of part 10 provides "The inspector shall * * * prevent the continuance of any such violation by seizing any prohibited article upon the premises and *by closing up such premises* * * *" (italics ours).

Section 3 of part 10 (penalties) provides: "For the purpose of paying the expenses for permits under these rules and regulations, any person, firm, or corporation, applying for a permit shall pay a fee of fifty cents (50 cents), and wherever by these rules and regulations, a survey is necessary, any person, firm, or corporation applying for a permit shall pay a fee of five dollars ($5.00)."

We are clearly of the opinion that the conviction cannot be sustained.

1. It is conceded that the act and the rules and regulations based thereon are penal in character. *Cf. Marter* v. *Repp,* 80 *N. J. L.* 530, 532; 77 *Atl. Rep.* 1030; *affirmed,* 82 *N. J. L.* 531; 81 *Atl. Rep.* 1134. It is rudimentary that in a summary proceeding on a penal statute or ordinance nothing is presumed or intended in favor of the complaint and conviction thereon. *Cf. State* v. *Rowe,* 116 *N. J. L.* 48, 51; 181

*Atl. Rep.* 706; *affirmed,* 122 *N. J. L.* 466; 5 *Atl. Rep.* (*2d*) 697. The city was obliged to prove the charge as made. It was necessarily obliged to sustain its power to pass the regulation allegedly violated. In the discharge of its stated obligations, the city made it abundantly clear that it did not claim to have the "inherent authority," nor the legislative "authority" under the Home Rule Act (*Pamph. L.* 1917, *ch.* 152, *p.* 319, now *N. J. S. A.* 40 :42-1, *et seq.*), to pass that regulation. It based its authority solely upon the provisions of the act of 1906, *supra, N. J. S. A.* 40 :174-120. It adheres to its stated position below. Additionally, however, it now invokes, by virtue of the saving clause (paragraph 6, *Pamph. L.* 1906, *supra, N. J. S. A.* 40 :174-125) and the provisions concerning the construction of the Home Rule Act (*N. J. S. A.* 40 :42-3) a provision of its charter, namely, section 121, *Pamph. L.* 1871, *pp.* 1095, 1145, as further authority for the passage of the regulation charged to have been violated. Passing over the merit, if any, of this added claim of authority (*Cf. Harrington's Sons Co.* v. *Jersey City,* 78 *N. J. L.* 610; 75 *Atl. Rep.* 943), it is not of the character that can be considered when it is raised here for the first time. *Cf. Kluczek* v. *State,* 115 *N. J. L.* 105, 107; 178 *Atl. Rep.* 632. The question, moreover, is not whether the city might have invoked other statutory power for the passage of its rules and regulations in issue. That question is not before us. Rather is the question whether the act that was invoked supports the charge as made, and the conviction under review.

On its stated theory, the city argues that neither the inflammability nor volatility of the oil transported is the test for the need to obtain the required permit, that since the oil transported was concededly a petroleum product, and that since "petroleum" is one of the inhibited products enumerated in paragraph 4 of *Pamph. L.* 1906, *supra* (*N. J. S. A.* 40 :174-123), the required permit was necessary for the transportation of oil into or through the city. That argument is rested upon the premise that when prosecutor had the oil in its tank wagon while in the city—although for the limited time of making a delivery—the tank wagon came, in the light of the general language of the act, within the language

of paragraph 4 of *Pamph. L.* 1906, *supra; N. J. S. A.* 40:174-123, which so far as is pertinent, as we have shown, reads: "No person * * * or corporation shall have, keep * * * [Petroleum] in any building *or in or on any property* in any city of the first class * * *." We cannot agree. It is the long settled rule (*eiusdem generis*) in the construction of statutes that when general words ("in or on any property") follow specifically named things of a particular class ("in or on any building"), the general words must be understood (unless there is some indication to the contrary and there is no such indication) as limited to things of the same class, or at least of the same general character. *Livermore* v. *Board of Chosen Freeholders of Camden,* 31 *N. J. L.* 507, 511, 512. *Cf. Curtis & Hill, &c., Co.* v. *State Highway Commission,* 91 *N. J. Eq.* 421 (at *pp. 429, et seq.*); 111 *Atl. Rep.* 116. A reading of the entire act impels the conclusion that the general phrase "in or on any other property" refers to real property. Paragraph 3 of the act (*N. J. S. A.* 40:174-122) refers to "houses, stores, factories and other buildings and premises" and paragraph 4 of the act (*N. J. S. A.* 40:174-122) as already observed refers to any "building." A tank wagon is not comprehended by the stated language. Nor is it contemplated by the language in section 2 (Penalties) of the rules and regulations which reads, *inter alia,* "by closing up such premises." The act, moreover, is entirely silent as to the transportation of the inhibited products. We share the view that as to the transportation of the oil, as charged, the act exhibits a *"casus omissus"* which of course we cannot supply by judicial construction. *Cf. Public Service Co-ordinated Transport* v. *State Board of Tax Appeals,* 115 *N. J. L.* 97, 103, 104; 178 *Atl. Rep.* 550. No construction of a statute, however liberal, can justify judicial legislation.

2. Even were we to assume, however, that the City of Jersey City has power (*Cf. N. J. S. A.* 40:48-1, *et seq.,* and 40:48-2), other than the power asserted to pass regulatory measures, as distinguished from revenue measures, concerning the transportation of inflammable and volatile oils into and through its territorial limits, our result would be the same.

There were no proofs that the grades of oil sold by prosecutor, numbers 2, 5 and 6, were inflammable or volatile. There was, however, proof by the president of prosecutor that the "accredited test" for inflammability of "petroleum products" is at a "flash point below 80," that the flash point of its number 2 oil is "anywhere from 140 to 200," that the flash point of its number 5 oil is "anywhere from 140 to 200," that the flash point of its number 6 oil is "anywhere from 160 to 200" and may even be "as high as 300," that the oil burns when "artificially atomized" or "vaporized through heat" and that its tank wagons carried no such appliances. In other words he testified that the oil products sold by prosecutor were "not volatile," "not explosive unless atomized." His testimony is assailed on the ground that he was not a scientifically trained chemist. True he was not a scientifically trained chemist but he was a practical chemist. He had been in the oil business for over sixteen years, he was a member of the National Bureau of Fuel Oil Specification (United States Department of Commerce); he was the president of the New Jersey Fuel Oil Distributors Association. He was indeed qualified, from practical experience, to give opinion testimony. *Wheeler & Wilson* v. *Buckhout*, 60 *N. J. L.* 102; 36 *Atl. Rep.* 772; *Crosby* v. *Wells*, 73 *N. J. L.* 790; 67 *Atl. Rep.* 295; *Fenias* v. *Reichenstein*, 124 *N. J. L.* 196; 11 *Atl. Rep.* (*2d*) 10.

3. The penalty provision of the local legislation is fatally defective. Contrary to *N. J. S. A.* 40:49-5 it deprives the magistrate of his discretion to impose a lesser penalty than the prescribed maximum. *Pfister Chemical Co.* v. *Romano*, 15 *N. J. Mis. R.* 71; 188 *Atl. Rep.* 727. The fact that the ordinance (rules and regulations) antedates *N. J. S. A.* 40:49-5 does not, irrespective of the provisions of *N. J. S. A.* 40:49-3, negative the limitations contained in *N. J. S. A.* 40:49-5. *LaForgia* v. *Hoboken*, 10 *N. J. Mis. R.* 657; 160 *Atl. Rep.* 502; *Fields* v. *Duffy*, 115 *N. J. L.* 319; 180 *Atl. Rep.* 225.

In light of the result reached, it is unnecessary further to discuss the other points argued.

The conviction is set aside, with costs.