Harry N. SAVELKOUL, Plaintiff and Appellant,

v.

BOARD OF COUNTY COMMISSIONERS, WARD COUNTY, North Dakota, Defendant and Respondent.

No. 7759.

Supreme Court of North Dakota.

May 8, 1959.

Joseph P. Stevens, Minot, for appellant.

LeRoy A. Loder, State's Atty., Minot, for respondent.

SATHRE, Chief Justice.

The Legislative Session of North Dakota of 1955 enacted Chapter 119 known as the County Zoning Act. This Act now appears in the 1957 Supp. NDRC 1943, as Chapter 11-33.

The purpose of this Act is stated in Section 11-3301, 1957 Supp. NDRC 1943, which is as follows:

"For the purpose of promoting health, safety, morals, public convenience, general prosperity and public welfare, the board of county commissioners of any county is hereby empowered to regulate and restrict within the county, subject to section 20 of this Act (s. 11-3320), the location and the use of buildings and structures and the use, condition of use or occupancy of lands for residence, recreation, and other purposes."

Section 11-3302 of said Act authorizes the county commissioners of any county in the state, by resolution, to divide all or any parts of the county, subject to the limitations in Section 11-3320 of said Act, into districts of such number, shape, and area as may be deemed necessary, and may likewise enact suitable regulations to carry out the purposes of the Act. Section 11-3303 of the Act defines the object of the regulations and is as follows:

"These regulations shall be made in accordance with a comprehensive plan and designed for any or all of the following purposes:

"1. To protect and guide the development of non-urban areas;

"2. To secure safety from fire, flood, and other dangers;

"3. To regulate and restrict the erection, construction, reconstruction, alteration, repair or use of buildings and structures, the height, number of stories, and size of buildings and structures, and percentage of lot that may be occupied, the size of courts, yards, and open spaces, the density of population, and the location and use of buildings, structures, and land for trade, industry, residence or other purposes;

"4. To lessen governmental expenditures;

"5. To conserve and develop natural resources.

"These regulations shall be made with a reasonable consideration, among other things, to the character of the district and its peculiar suitability for particular uses."

Section 11–3304 of said Act provides that where a Board of County Commissioners of any county decides to avail itself of the powers of the Act it shall establish, by resolution, a county planning commission to recommend the boundaries of the various county zoning districts and appropriate regulations and restrictions to be established therein. The membership of such Commission shall be nine, two of whom shall be appointed from the board of county commissioners, and two from the governing body of the municipality designated as the county seat of the county, and the remaining five members are to be appointed from the county at large.

Section 11–3307 of said Act requires the Planning Commission after investigation to prepare a proposed resolution to be submitted to the board of county commissioners, establishing the zoning district and appropriate regulations therefor, which resolution shall be filed in the office of the county auditor.

The Act provides for the publication of the resolution, for hearing to be had thereon, and after its adoption, for the enforcement of its provisions.

Under the provisions of said Act, the Commissioners of Ward County, on June 10, 1955, adopted a resolution establishing Zoning District No. 1, of Ward County. The main reason for adoption of the resolution was that The United States Air Force was in the process of establishing an Air Base in Ward County about 13 miles north of the City of Minot, and that in order to permit the orderly development of the county in and around said Air Base, so as to prevent congestions of population and to prevent undesirable buildings, struc-

tures, business or the conduct of undesirable activities around the Air Base, Zoning District No. 1, was established.

The pertinent provisions of the resolutions are as follows:

"Be It Further Resolved that in said Zoning District No. 1, there shall be established the following regulations:

"I. Land Usage-There shall be no subdivision or subdivisions or outlots in said Zoning District No. 1, except those incident to farming.

"II. Structural Occupancy-There shall be no buildings, structures or other edifice erected in said Zoning District No. 1, which could be used for mass meetings such as Clubs, Churches, Dance Halls, Schools, Night Clubs, Restaurants, Recreational Centers, Bowling Alleys, or Roller Skating Rinks or any Hotels, Motels, Apartment Houses, Trailer Courts, or other housing not incident to farming; or any other buildings or structures where human lives may be jeopardized by operation of the said Air Field.

"III. Types of Structures—All structures or buildings other than those prohibited by Section II shall conform to the requirements of the Basic Building Code of the Building Officials Conference of America, Inc. 1950 edition and amendments thereto; said Building Code with amendments thereto, being incorporated by reference as a part of this resolution.

"IV. Permits-As a prerequisite to construction, erection, reconstruction, alteration, repair or enlargement of any building or structure in said Zoning District No. 1, there shall be secured from the Board of County Commissioners a permit, which will be known as a building permit. A fee shall be collected for the issuance of said building permit in the amount to be determined by the County Commission-

ers, which fee shall be credited to the general fund of the County.

"V. Limitation-The foregoing requirements in their entirety shall not apply to any farm buildings."

The resoultion was published and hearing was had thereon in the manner and form provided by the Act.

On August 30, 1957, the appellant, Harry N. Savelkoul, made application to the Board of County Commissioners of Ward County for permission to build a gasoline filling station in accordance with the plans and specifications accompanying the application upon a tract of land within Zone No. 1 established by the said Board of County Commissioners. The application was introduced in evidence as plaintiff's exhibit 1. Accompanying the application was a check in the sum of $20 as payment for the permit. At a meeting of the Board of County Commissioners held on September 3, 1957, the application of the plaintiff was denied. Plaintiff's exhibit 5, an excerpt of the minutes of the meeting of said Board of County Commissioners relative to the rejection of the application of Savelkoul, is as follows:

"Moved by Commissioner Dahl, seconded by Sandberg that the application of Harry N. Savelkoul, for a permit to build a gasoline filling station in the NE¼ of Section 30, Township 157, Range 82, Zoning District No. 1, be rejected for the reason that the granting of such permit would be contrary to the regulations established in said Zone No. 1, Motion carried."

The plaintiff appealed to the district court from the decision of the County Commissioners. The district court affirmed the County Commissioners and judgment was entered accordingly. The case is here on appeal from the judgment and a trial de novo is demanded.

The parties stipulated by their respective attorneys that the questions of fact the appellant desired to have reviewed are as follows:

I. Does the building permit requested comply with the requirements of Zoning District No. 1, as created by the Board of County Commissioners, so as to entitle the appellant to the building permit requested.

II. Is the action of the Board of County Commissioners of Ward County, North Dakota, arbitrary so that to the extent as to make their action void.

III. Is the resolution adopting Zoning Ordinance No. 1 in compliance with Chapter 119 of the 1955 Session Laws for the State of North Dakota.

Gisle Johnson, the building inspector of Ward County, testified and it is conceded that the plans and specifications prepared by the appellant Savelkoul for the proposed service station conform to all the requirements of the Basic Building Code of the Building Officials of America, Inc., 1950 edition and amendments thereto.

The next question is whether the service station which the appellant proposed to construct in Zoning District No. 1 is a building or structure prohibited by the resolution establishing said zoning district and more particularly Section II thereof.

It is the contention of the respondents, the county commissioners, that the close proximity of the proposed service station to the air port base, air traffic and flight plans brings it within the classification of structures or buildings where human lives may be jeopardized by operation of the air field. Under the language of the resolution the nearness to or distance from the air field is immaterial. The construction of any building of the type specified in Section II of the Zoning Resolution is prohibited in the entire area of the Zoning District if such building "could be used for mass meetings such as clubs, churches, etc. * * *". The resolution then continues:

" * * * or any other buildings or structures where human lives may be

jeopardized by operation of the Air Field."

The clear inference from the language of the resolution, particularly the phrase, "could be used for mass meetings", indicates that the objectionable feature of the prohibited buildings, whether specifically mentioned or not, is whether they are designed for purposes that attract people in large numbers thus resulting in crowded and congested conditions within the Zoning District.

■■ Under the principle of ejusdem generis the phrase "could be used for mass meetings" is restricted to buildings specifically mentioned, or to "any other buildings where human lives may be jeopardized by operation of the Air Field."

In Vol. I, Zoning Law and Practice, Yokley 2nd Edition, page 184, it is stated:

"It has been said that under the principle of 'ejusdem generis' general words following particular and specific words are not, in a zoning ordinance, given their natural and ordinary sense standing alone, but are confined to persons and things of the same kind or genus as those enumerated."

In Piaget-Del Corp. v. Kulik, 133 N.J. L. 485, 45 A.2d 125, 126, it states:

"Under the principle of ejusdem generis, general words following particular and specific words are not given their natural and ordinary sense, standing alone, but are confined to persons and things of the same kind or genus as those enumerated. Studerus Oil Co. Inc. v. Jersey City, 128 N.J.L. 286, 25 A.2d 502; Syms v. Town of West Hoboken, 90 N.J.L. 130, 100 A. 191; Craft v. Smith, 35 N.J.L. 302; Livermore v. Board of Chosen Freeholders of County of Camden, 29 N.J.L. 245, affirmed 31 N.J.L. 507."

It follows by necessary implication that the same test must be applied to all buildings within the Zoning District, whether specifically mentioned in the resolution, or whether they come within the class designated as "any other buildings and structures where human lives may be jeopardized by operation of the Air Field." The question in the instant case is, therefore, whether the service station which the appellant proposed to construct within the Zoning District is a building or place of business that can be used for "mass meetings" or where people usually congregate in large numbers so as to endanger human lives by reason of the operation of the Air Field.

■■ There is no evidence or testimony in the record that a service station such as the one proposed to be built by the appellant is objectionable on the grounds that it can be used for "mass meetings," or that it is a place or building where people will congregate in large numbers. It is common knowledge that motorists do not spend much time at service stations. They usually stop long enough to procure oil and gasoline, and then proceed on their journey. Upon the record before us we conclude that the construction of the service station proposed by the appellant is not within the inhibition of Section II of the Resolution establishing Zoning District No. 1, of Ward County.

The final question is whether the resolution establishing the Zoning District complies with the provisions of the Enabling Act, Chapter 119 of the Session Laws of 1955 of the State of North Dakota; but since neither party has pointed out wherein the resolution is in conflict with the statute, said question raises no issue requiring a determination on this appeal.

The judgment of the district court is reversed and the case remanded for further proceedings in conformity with this opinion.

TEIGEN, STRUTZ, MORRIS, and BURKE, JJ., concur.