## NETTIE BROCKWAY v. ROBERT PATTERSON.

*Liquor traffic—Civil damage law—Injury to widow by death of husband—Evidence—Damages—Qualification of juror.*

1. The statute giving a right of action to the wife or other person "injured in person or property or means of support by any intoxicated person, or by reason of the intoxication of any person," is broad enough to include the widow, who must be considered "a person," and who is certainly injured in her "means of support" by the death of her husband *from* intoxication, or *by reason of* the intoxication of himself or another person.

2. Under the statute giving a right of action for injury occasioned by an intoxicated person, it is not for the injured party to produce proof, or for the jury to speculate, upon the probabilities whether the intoxication was the natural cause of the act which caused the death. The *act* itself fixes the liability for the damage upon the person selling or furnishing the liquor which caused the intoxication.

3. In a suit by a widow for damages resulting from the death of her husband from injuries received at the hands of an intoxicated person, evidence of the habits of the husband as a drinking man previous to the date of his injury is pertinent as bearing upon the question of damages; and proof that he was peaceable and quiet when sober, and noisy and quarrelsome when drunk, is also admissible, as bearing upon the question of his intoxication at the time, and whether such intoxication contributed to his injury and death.

4. It is error to exclude, as an element in the computation of damages to be awarded a widow for loss of support by reason of the death of her husband, *his* life expectancy, and ability during *such* period to support his wife.

5. No man who is so prejudiced against another or his business that his prejudice will, of itself, prevent him from doing justice to the testimony of the person against whom such prejudice is entertained, ought to sit as a juror in any case where such person is a party, and in which his liberty or property rights are involved.

Error to Kent. (Montgomery, J.) Argued June 28, 1888. Decided October 26, 1888.

Case under "civil damage act." Both parties bring error. Judgment in favor of plaintiff affirmed. The facts are stated in the opinion.

*Godwin, Adsit & Dunham,* for defendant and appellant,. contended:

1. By How. Stat., §§ 3391, 3392, 3491, 8313, 8314, the Legislature intended to furnish a definition and limitation that should cover all claims for damages consequent upon death, and the civil damage act was not intended to add thereto; citing *Davis v. Justice,* 31 Ohio St. 359.

2. We do not find that this question has been considered by this. Court. The statute under which this suit is brought is construed in *Kehrig v. Peters,* 41 Mich. 475; *Steele v. Thompson,* 42 Id. 594; *Wilson v. Booth,* 57 Id. 249; *Rosecrants v. Shoemaker,* 60 Id. 4; *Flower v. Witkovsky,* 69 Id. 371.

*Myron H. Walker,* for plaintiff and appellant, contended:

1. The civil damage act is in the nature of remedial legislation,. and should be liberally construed; citing *Flower v. Witkovsky,* 69 Mich. 371.

2. It creates a right of action unknown to the common law, and both direct and consequential injuries are included, and effect should be given to all its parts; citing *Volans v. Owen,* 74 N. Y. 526.

3. The weight of authority sustains the right of action in this case; citing *Quain v. Russell,* 8 Hun, 319; *Smith v. Reynolds,* Id. 128; *Jackson v. Brookins,* 5 Id. 530; *Davis v. Standish,* 26 Id. 608;. *Mead v. Stratton,* 87 N. Y. 493; *Neu v. McKechnie,* 95 Id. 632;. *Roose v. Perkins,* 9 Neb. 304; *McClay v. Worrall,* 18 Id. 44 (24 N. W. Rep. 429); *Kerkow v. Bauer,* 15 Id. 150; *Rafferty v. Buckman,* 46 Iowa, 195; *Ward v. Thompson,* 48 Id. 588; *Richmond v. Shickler,* 57 Id. 486; *Hackett v. Smelsley,* 77 Ill. 110; *Schroder v. Crawford,* 94 Id. 357; *Schmidt v. Mitchell,* 84 Id. 195; *Emory v. Addis,* 71 Id. 273.

4. The jury must trace the injury to the intoxication, and the intoxication to the act of the defendant; citing above cases, and *Steele v. Thompson,* 42 Mich. 594; *Volans v. Owen,* 74 N. Y. 526; *Bertholf v. O'Reilly,* Id. 509; *King v. Haley,* 86 Ill. 106; *English v. Beard,* 51 Ind. 489; *Jackson v. Brookins,* 5. Hun, 530.

MORSE, J.   The plaintiff brought her action in this case under Act No. 191, Laws of 1883, known as the "Civil Damage Act," claiming damages by injury to her means of support as the wife of Adous Brockway, who, it is alleged, by reason of his own intoxication and the intoxication of one Louis Lane, received injuries at the hands of said Lane resulting in death; both of said persons receiving the liquor which caused such intoxication from the defendant, an hotel keeper at Cascade, Kent county, in this State.

The cause was tried in the Kent circuit before a jury, and the plaintiff had verdict and judgment in the sum of $500.   Both parties come into this Court upon bills of exceptions, alleging errors at the trial, which were argued and submitted together.   The facts, in brief, are as follows:

Adous Brockway, the husband of plaintiff, lived about one and one-quarter miles from the hotel of the defendant, where he had resided since 1884, and was in the habit of drinking occasionally, sometimes bringing liquor home with him.   For the last year before his death he was a frequent visitor at the hotel, and had several drunken sprees.   Louis Lane worked and boarded a mile or so from defendant.

On the 22d day of May, 1886, Lane and one Dreuse came to defendant's place about 6 P. M., and commenced drinking.   It being on Saturday night, other persons, as the hour grew later, dropped in.   Brockway was among them, getting in about 8 o'clock.   A great deal of drinking was done by the crowd, and both Lane and Brockway, before they left, became intoxicated.   Defendant was present, and dealt out the liquor.   Lane and Brockway were the last to leave the premises.   They went away together about half past 11.

About midnight, John Brass, who lived about three-

quarters of a mile from the hotel, on the road towards Brockway's home, heard a rap at his door, and a call for help. He found it to be Brockway, and let him in. He appeared to be badly injured, and in great pain, with a lump or swelling near the left temple. He soon became unconscious. The next day he was taken home, and put under medical treatment. He died from the injuries received Saturday night, on the morning of the next Tuesday, May 25th.

On the road it appears that Lane and Brockway had a quarrel. Brockway struck Lane twice, and Lane hit Brockway with a stone just above and back of the left temple. Upon a *post mortem* examination it was the conclusion of the physicians that Brockway's death resulted directly and necessarily from this blow. Both Lane and Brockway were sober when they went to defendant's place.

The first claim upon the part of the defendant is that the statute does not extend far enough, in terms or in spirit, to allow any recovery for the death of a husband; that it does not create any right of action in behalf of a *widow*; that the purport and meaning of the statute confines the recovery to damages resulting from injuries that do not end in death. It is argued that at common law no action could be brought by a widow on account of the death of the husband; that the Legislature, recognizing this fact, has provided by statute when recovery may be had for loss of life; and that within such statutory provisions, directly aimed at injuries resulting in death, is included all the remedy known to the law for civil damages growing out of the death of any person. See How. Stat. §§ 3391, 3392, 3491, 8313, 8314.

The statute upon which plaintiff grounds her action does not mention the widow, or speak of the death of an intoxicated person, or of death resulting from intoxication.

It gives a right of action, however, to the "wife" or other person—

"Injured in person or property or means of support by any intoxicated person, or by reason of the intoxication of any person." Laws of 1883, Act No. 191.

This language is broad enough to include the widow, who must be considered a "person," and who is certainly injured in her "means of support" by the death of her husband from intoxication, or by reason of the intoxication of himself or any other person. In this view we are supported by decisions in other States under similar statutes. See *Mead v. Stratton,* 87 N. Y. 493; *Roose v. Perkins,* 9 Neb. 304 (2 N. W. Rep. 715); *Rafferty v. Buckman,* 46 Iowa, 195; *Hackett v. Smelsley,* 77 Ill. 110.

It is further contended upon the part of the defendant that the injury must be the direct, necessary, or probable result of the intoxication. It is argued that the liquor drank by Lane and Brockway was beer, a mild stimulant at best, and one not likely ordinarily to cause such intoxication as would naturally lead to a quarrel or conflict between the parties. But the fact that intoxication did result to both these parties from the drinking of beer alone must have been found by the jury, under the charge of the court, or their verdict would have been for the defendant, if they followed, as we must presume they did, the instructions of the circuit judge. There was certainly evidence tending to show such intoxication.

It is claimed that the injury to Brockway, which resulted in his death, being conceded to have occurred in an affray between him and Lane, cannot be said to have been the necessary or probable result of the intoxication of either; that under all the testimony of the case the death of Brockway cannot be considered as the "natural and legitimate" result of either the selling of the beer, or the intoxication that resulted from the drink-

ing of it. . The following cases are cited in support of
this claim: *Flynn v. Fogerty*, 106 Ill. 263; *Shugart v.
Egan*, 83 Id. 56; *Schmidt v. Mitchell*, 84 Id. 195; *Krach
v. Heilman*, 53 Ind. 517; *Collier v. Early*, 54 Id. 559;
*Dunlap v. Wagner*, 85 Id. 529.

We have examined these cases. The statutes of these
states are different from ours. In Illinois the opinion of
the court in 83 Ill. is based upon the assumption that the
words "all damages sustained" should be construed with
reference to their known legal signification; that is, such
damages as, in legal contemplation, are to be regarded as
the result of the wrongful act. See 83 Ill. 57.

In Indiana the right of action is given to any—

"Person who shall sustain any injury or damage to his
person or property or means of support on account of the
use of such intoxicating liquors"—

Sold in violation of law. The decisions in that state are
expressly based upon the words "on account of the use."
See *Dunlap v. Wagner*, 85 Ind. 531.

The plaintiff's counsel in this respect contends that it
is not necessary to trace the injury to the intoxication,—
the fact of intoxication is enough; that if Lane was
intoxicated when he struck the blow that caused the
death of Brockway, the case comes within the express
words of the statute, which reaches any injury to her
means of support by any intoxicated person. He cites
the following cases: *Neu v. McKechnie*, 95 N. Y. 632;
*King v. Haley*, 86 Ill. 106; *Schmidt v. Mitchell*, 84 Id.
195.

The first case fully supports the contention of the
plaintiff. It is there expressly held that it is not essen-
tial to maintain an action of this kind that the plaintiff
must show that the act of the intoxicated person, which
caused the injury, was the natural, reasonable, or prob-
able consequence of his intoxication; it is sufficient if it

appears that the act was done while the person was intoxicated, in whole or in part, by liquors sold by the defendant.

In my opinion, this construction of the statute is the only proper one. The statute provides, as plain as the English language can state it, that this action shall lie for any injury occasioned by an intoxicated person. It is not for the injured party to produce proof, or for the jury to speculate, upon the probabilities whether the intoxication was the natural cause of the act which caused the death. The act itself by a person intoxicated fixes the liability for the damage upon the person selling or furnishing the liquor which caused the intoxication.

But the court did not go so far as this. The jury were plainly instructed that they must find the injury to have resulted from the intoxication of Lane. The court said that they must find that the intoxication of Lane was so connected with his act of striking the blow that they could say that,—.

"According to reason, observation, and experience, the intoxication of Lane was the efficient cause of the blow; that the result must be fairly traced to Lane's intoxication."

This instruction was sufficiently favorable to the defendant, under all of the authorities.

It cannot be claimed that the selling of the beer was lawful. It was, perhaps, in the first instance, if the defendant did not know that either Lane or Brockway was in the habit of getting intoxicated; but there was evidence tending to show that both of them were furnished liquor after they had become intoxicated. It is therefore not necessary to examine into the liability under the statute where liquor is sold or furnished within the law. See *Flower v. Witkovsky*, 69 Mich. 371 (37 N. W. Rep. 364).

Complaint is made that the court erred in allowing

inquiry into Brockway's habits as a drinking man previous
to the night he was injured, and also in permitting proof
to be introduced that he was peaceable and quiet when
sober, and noisy and quarrelsome when drunk.

We think the testimony was admissible in both cases.
His habit as to drinking before this time of the affray
between him and Lane was a pertinent subject of inquiry
as bearing upon the question of damages. In cases of
this kind it must be conceded that the loss to the wife
of a sober and industrious husband must necessarily be
greater, in a pecuniary sense, than the loss of one who
is the opposite. But it is argued that this evidence had
a tendency to impress the jury with the idea that the
defendant was responsible for the drunken sprees of Brock-
way previous to the night in question, when there was
no testimony tending at all in that direction. In ans-
wer to this argument it may be said, without disputing
the proposition that there is no evidence showing that
defendant was responsible for Brockway's habits, that the
circuit judge very clearly confined the whole controversy
in this respect to the one night, and the small amount of
the verdict is pretty conclusive proof that the jury did
not charge defendant with the responsibility for the pre-
vious worthlessness of the husband caused by drink.

The second inquiry was admissible as bearing upon the
question whether or not he was intoxicated upon the night
in question, and whether such intoxication contributed to
his injury and death.

There are other assignments of error, but we do not
regard any of them as material. It does not seem to us
that the jury were misled upon the subject of damages or
prejudiced against the defendant in that respect, by any
of the testimony admitted. The charge very clearly con-
fined the damages to compensation for loss of means of

support to the wife alone, and carefully guarded against the danger of the jury awarding damages in gross of the whole amount the support of her husband might be found to be worth to her.    The court said:

"Now the expectancy of her life is 33 and 21-100 years.    This would furnish you *data* from which you could determine—that is, the evidence which has been offered tends to show that the expectancy of her life is 33 and 21-100 years—this would furnish you *data* from which you could determine with reasonable accuracy what would be fair to award .to this plaintiff.    But in such a case I should caution you that the damages ought not to be a sum total equal to the amount in gross of all the support which you find that the plaintiff would have received from her husband during his life.    The reason of this is that whatever sum you award her .she receives now in gross, and will have the use of this .sum, and the income of which will aid in her support; so that you can see that it would be unjust to now award her in gross a sum equal to all that she would during the entire expectancy have. reasonably expected to have received, because, she receiving whatever you award her in gross, the income of that award would and should be applied to her support, and in reduction to the amount which you should award her.    Although there is no evidence which affords any opportunity for an exact computation upon that in the case, yet the true and fair basis would be what it would cost to purchase an annuity; in other words, what sum in gross would enable the party investing the money, and applying the interest and enough of the principal together, to, during the period that you should find that she would have received that support from her husband, equal the amount which she would have received from year to year for her support.    This is a subject which should receive careful attention at your hands, in order, on the one hand, if you find for the plaintiff, that the award should be just, and commensurate to the injury sustained; on the other hand, that it should not be oppressive, or out of proportion to the injury, or based upon any fanciful or illusionary figures."

With the expectancy of this woman's life being at 33 years and upwards, if the expectancy of the husband's life

was not also taken into consideration, the jury must have found the support by the husband to be of little value, and cannot be said to have been prejudiced against the defendant. The annuity to be purchased by $500 would cut a very small figure indeed in compensation for the support afforded by a husband that was worth living with.

It is true, as contended by the counsel for defendant, that, in the computation of a sum to be awarded in gross in cases of this kind, the length of time that the husband might have been expected to live if he had not received this injury, and his ability during such life to support the wife, should also be taken into consideration. If an old and feeble man, the sum ought to be much less than if he were a young and vigorous one. The circuit judge did not as clearly set forth this consideration as he might, or perhaps as he ought to, have done, in connection with his remarks as to the wife's expectancy of life. The jury were instructed that the plaintiff was entitled to her loss of support for the time which they might find she would have received such support from her husband had he continued alive. This would have been a proper instruction had not the court further said:

"The jury should then take into account the length of time which the plaintiff would be expected to live, and with this *data* the jury can get a fair, reasonable, and just award."

This remark, in connection with the portion of the charge heretofore quoted, would be open to the complaint that the jury were thereby misled into considering and determining that the plaintiff was entitled to the loss of her husband's support during the expectancy of her life, without reference to the probabilities of the husband's life continuing as long as she might live, were it not for the fact that the amount of the verdict is so

small, under the evidence, that it is self-evident that the probability of the husband's life must have been considered in fixing the amount of damages.  We are therefore of the opinion that no prejudice resulted to the defendant from the charge of the court.

The plaintiff, in her bill of exceptions, claims error in the impaneling of the jury.  Several of the persons drawn as jurors were asked if they would allow less weight and credit to the testimony of the defendant, because of his being a saloon keeper, than they would if he was engaged in some other business.  Those who answered that the mere fact of the defendant being engaged in the sale of liquors would in their minds affect his credibility as a witness, or that they entertained a prejudice against a liquor seller to such an extent that they could not give his testimony the same credit that they would a person not engaged in the business of selling liquor, were challenged for cause, and excused by the court.  It is claimed by the counsel for the plaintiff that this was error.  It is argued in support of the proposition that "it is a notorious fact, a matter of every-day experience, that saloon-keepers, as a class, are not credible or truthful in cases affecting their business, as are other classes of business men;" that perjury is "frightfully common" among them in all such cases; and that, "while the law presumes that they shall be men of good moral character, they are, in fact, notorious law breakers;" that the business of a witness is a matter of rightful inquiry in all cases, and a fact to be weighed by the jury in determining the value of his testimony.

From this argument it is deduced that a juror cannot be considered disqualified because he exercises his right to judge the occupation of a witness as it is known to be, one—as in the case of a saloon keeper—which affects the truthfulness of his testimony.  It is not to be dis-

puted that many persons share the same opinion of those engaged in the sale of liquor which is shown in this argument, but the trial of this case in the circuit court demonstrated the fact that this opinion is not held by every one, and there seems to have been no difficulty in securing a jury of 12 good citizens, who had no prejudice against a saloon keeper sufficient to prevent them from impartially weighing his testimony, without regard to his occupation, and giving him a fair trial of his case upon the merits.

It is not necessary, in my opinion, to cite authority to show that he was entitled to such a jury and such a trial. No man who is so prejudiced against another or his business that this prejudice will, of itself, prevent him from doing justice to the testimony of the person against whom he holds such prejudice, ought to sit as a juror in any case where such person is a party, and has his liberty or his property rights involved. The liquor seller has the same right to an impartial jury and a fair trial as any other man, and he can have neither if the argument of the counsel for the plaintiff is sound. To permit one who believes a saloon keeper to be the embodiment of all that is vile, and incapable of telling the truth where his interests are concerned, to sit as a juror in a case of this kind, would be an outrage upon justice, and a violation of the law, which presumes that all men are honest and truthful until the contrary is shown

Nor do we think the court erred in excluding the statements of Brockway, made to Brass at his house on the night of the injury, as to his injury and how he received it. Neither is it apparent that the rejection of this evidence resulted in any harm to the plaintiff. The jury must have found, under the charge of the court, that the injury was inflicted by Lane while he was intoxicated, or by reason of the intoxication of one or both of them, or

their verdict would have been for the defendant. The statements of Brockway made to Brass must have been to the same effect, or its exclusion could not have prejudiced plaintiff, and, as it was, the jury seem to have reached the conclusion desired by the plaintiff without such statement.

The judgment will be affirmed, with costs to plaintiff, with the exception of cost of making and printing plaintiff's bill of exceptions, which must be borne by her.

SHERWOOD, C. J., CHAMPLIN and LONG, JJ., concurred with MORSE, J.

CAMPBELL, J.　I do not think the statute covers such indirect results as are shown or claimed to be shown in this case.