Leonard R. MESHEFSKI and Audrey J. Meshefski, Plaintiffs and Appellants,

v.

SHIRNAN CORPORATION, a North Dakota corporation, Defendant and Appellee.

Civ. No. 11045.

Supreme Court of North Dakota.

April 10, 1986.

Patrick W. Fisher, of McConn, Fisher & Thune, Grand Forks, for plaintiffs and appellants.

Patrick R. Morley, of O'Grady, Morley & Morley, Grand Forks, for defendant and appellee.

VANDE WALLE, Justice.

Leonard R. Meshefski and Audrey J. Meshefski appealed from a judgment dismissing their action against Shirnan Corporation for damages arising out of the death of their son, Paul. They also appealed from an order denying their motion for a new trial. We reverse and remand for a new trial.

Meshefski went to the C & D Bar, which is owned and operated by Shirnan Corporation, at approximately 7 p.m. on December 17, 1983. Lorenzo Leal went to the C & D Bar sometime between 8 and 9 p.m. While in the C & D Bar, Meshefski and Leal each consumed an undetermined amount of beer. Leal had also consumed a six-pack of beer in his home between approximately 3:30 and 5 p.m. Shortly after midnight, a fight broke out and Leal stabbed Meshefski in the heart, resulting in his death.

There was conflicting testimony as to whether or not Leal and Meshefski were visibly intoxicated. Analysis of blood samples drawn from Leal and Meshefski after the incident indicated that Leal had a blood-alcohol concentration of 0.24 percent and Meshefski had a blood-alcohol concentration of 0.29 percent. There was testimony that Leal may have been intoxicated from the use of drugs.

Trial of the Meshefskis' dram-shop action against the Shirnan Corporation resulted in a general verdict and judgment of dismissal. The Meshefskis' motion for a new trial was denied and they filed this appeal in which they raise the following issues:

"I. Did the District Court err in instructing the jury that before it could award the Meshefskis damages it must first decide that 'intoxication caused Meshefski's death' and that if it did not the jury must 'return a verdict for the Defendant'?

"II. Did the District Court err in failing to give the Meshefskis' requested instructions, including an instruction on direct and circumstantial evidence?

"III. Was the verdict against the weight of the evidence and did the District Court err in failing to grant the Meshefskis' a new trial?"

The Meshefskis' action was brought pursuant to our Dram Shop Act, § 5–01–06, N.D.C.C., which, at the time of Paul Meshefski's death, provided:[1]

"*5–01–06. Recovery of damages resulting from intoxication.* Every spouse, child, parent, guardian, employer, or other person who is injured by any intoxicated person, or in consequence of intoxication, shall have a right of action against any person who caused such intoxication by disposing, selling, bartering, or giving away alcoholic beverages contrary to statute for all damages sustained, and in the event death ensues, the survivors of the decedent are entitled to such damages as defined in section 32–21–02."

The "contrary to statute" provision is met if there is a violation of § 5–01–09, N.D.C.C., which provides:

"*5–01–09. Delivery to certain persons unlawful.*—Any person delivering alcoholic beverages to a person under twenty-one years of age, an habitual drunkard, an incompetent, or an intoxicated person is guilty of a class A misdemeanor, subject to the provisions of sections 5–01–08, 5–01–08.1 and 5–01–08.2."

---

1. The statute has since been amended in respects not relevant to our discussion here.

The Meshefskis assert that the trial court erred in instructing, over objection, that:

"Before you can consider the question of damages you must first decide if Defendant sold alcoholic beverages to either Leal or Meshefski while they were intoxicated and that such intoxication caused Meshefski's death. If you decide such was not the case your work is completed and you will *return a verdict for the Defendant. . . .*"

Section 5–01–06, N.D.C.C., unambiguously provides two grounds for recovery of damages: (1) injury "by any intoxicated person"; or (2) injury "in consequence of intoxication." See *Iszler v. Jorda,* 80 N.W.2d 665, 667 (N.D.1957), where we said:

"The statute authorizes an award of damages not only for certain injuries by an intoxicated person but also for injuries in consequence of the intoxication of any person."

The Meshefskis further assert that in order to recover damages for injuries inflicted "by any intoxicated person" they need not prove that intoxication was the proximate cause of the injury and that the trial court, in instructing that intoxication must have caused the death, improperly allowed the jury to return a verdict for the defendant upon finding that Leal would have stabbed Meshefski even if sober. We agree that the instruction added an element not specified in the statute.

In *Walton v. Stokes,* 270 N.W.2d 627, 628 (Iowa 1978), which also involved injuries sustained in an altercation, the Iowa Supreme Court reaffirmed the rule earlier adopted in *Lee v. Hederman,* 158 Iowa 719, 722, 138 N.W. 893, 894 (1912):

"... It is enough that the injury was *by* an intoxicated person, regardless of whether it would have been committed by him if sober. In other words, if *by* an intoxicated person, it is not necessary to prove that the injury was in consequence of intoxication." [Emphasis in original.]

See also, *King v. Partridge,* 9 Mich.App. 540, 157 N.W.2d 417, 419 (1968), where the court said:

"Having found that the barmaid was intoxicated, the court need not require proof that the intoxication was the proximate cause of the injury. The 'act itself by a person intoxicated fixes the liability for the damage upon the person selling or furnishing the liquor which caused the intoxication.' *Brockway v. Patterson* (1888), 72 Mich. 122, 128, 40 N.W. 192, 195, 1 L.R.A. 708."

Shirnan Corporation's reliance on cases involving injuries "in consequence of intoxication" is misplaced. Also misplaced is reliance on the following statement in *Wanna v. Miller,* 136 N.W.2d 563, 570 (N.D.1965):

"It is sufficient if it be proved that a defendant who is engaged in the business of selling alcoholic beverages sold, ... (... an alcoholic beverage to an intoxicated person) and that the damages complained of resulted from the intoxication of the person who was sold, ... the alcoholic beverage."

The foregoing statement was made only in response to the defendant's assertion that there was no proof that the intoxicated person received his last drink in the defendant's bar. Further, by stating that the proof was "sufficient," we did not mean to imply that such proof is required in all dram-shop actions.

"Where an action is brought for an injury inflicted 'by an intoxicated person,' that is, by the affirmative act of an intoxicated person, the courts are practically unanimous in holding that it is not necessary that the intoxication be the proximate cause of the injury." Annot., 64 A.L.R.2d 705, 722 (1959).

See also, Annot., 65 A.L.R.2d 923 (1959); 45 Am.Jur.2d *Intoxicating Liquors* § 583 (1969).

We conclude that under the facts of this case the trial court erred in instructing the jury that, unless it found that "such intoxication caused Meshefski's death," it should return a verdict for the defendant. Shirnan Corporation conceded at oral argument that if Meshefski's death need not have

been caused by intoxication, the instruction constituted reversible error. We conclude that we must reverse the judgment and the order denying a new trial.

Although our determination that the trial court erred in instructing the jury that it must decide if "such intoxication caused Meshefski's death" is dispositive of this appeal, we deem it appropriate to consider the trial court's denial of the Meshefskis' request for an instruction about Leal's possible intoxication from the use of drugs because the issue is certain to arise upon remand.

In accordance with the Meshefskis' request, the trial court gave the following instruction, based on N.D.J.I. 331:

"A person is intoxicated within the meaning of these instructions, when his manner is unusual or abnormal and his intoxicated condition is reflected in his walk or conversation, when his ordinary judgment and common senses are disturbed, when his usual will power is temporarily suspended, and these or similar symptoms result from the use of alcoholic beverages and become reasonably discernible to a person of ordinary experience. It is not necessary that the person should be so-called 'dead drunk' or helplessly intoxicated. It is enough that his senses are substantially impaired by the use of intoxicating beverages."

During the course of the trial, however, there was testimony that Leal may have been intoxicated through the use of drugs. Counsel for the Meshefskis then objected to use of the instruction because:

"... whether or not a person is high on chemical, alcohol or some other chemical they are intoxicated and to let the jury think it is all right to serve somebody intoxicated on some other drug we think would be incorrect."

The trial court noted the objection and denied "that change." In their brief, the Meshefskis contend that "[t]he instruction should have been changed to read '... these or similar symptoms result from the use of alcoholic beverages, drugs or other chemical substances....' "

Shirnan Corporation, on the other hand, contends:

"There is no law in the state of North Dakota that would include drugs other than alcohol within the definition of an intoxicated person. To do so would impose an unreasonable and impossible standard upon tavern owners."

Because there was testimony that Leal may have been intoxicated through the use of drugs other than alcohol, we believe that in defining an intoxicated person, the instruction erroneously specified that the person's reasonably discernible symptoms of intoxication "result from the use of alcoholic beverages."

Although the symptoms of intoxication in previous dram-shop actions did result from the use of alcoholic beverages, that is not an essential element of § 5–01–09, N.D. C.C., which makes it unlawful to deliver alcoholic beverages to an intoxicated person. The statute does not limit the unlawfulness of delivery of alcoholic beverages only to those intoxicated persons whose intoxication resulted from the use of alcoholic beverages.

■■■ We perceive no functional difference between delivering alcoholic beverages to an intoxicated person whose intoxication resulted from the use of alcoholic beverages and delivering alcoholic beverages to an intoxicated person whose intoxication resulted from the use of drugs other than alcohol. A vendor of alcoholic beverages should not deliver alcoholic beverages to a person who exhibits "outward manifestation of intoxication" [*Jore v. Saturday Night Club, Inc.*, 227 N.W.2d 889, 895 (N.D.1975), *quoting Strand v. Village of Watson*, 245 Minn. 414, 72 N.W.2d 609, 615 (1955)], regardless of the cause of the intoxication. To the extent that many of the visible symptoms of intoxication are the same, regardless of the cause of the intoxication, imposing liability on a vendor of alcoholic beverages for damage caused by an intoxicated person who was sold alcoholic beverages at a time when he exhibited outward manifestations of intoxication

caused by the use of drugs will not "impose an unreasonable and impossible standard upon tavern owners." We hold that a vendor of alcoholic beverages may be held liable for damage caused by an intoxicated person who was sold alcoholic beverages at a time when he exhibited outward manifestations of intoxication regardless of the cause of the intoxication. To hold otherwise would neither "suppress the mischief" sought to be suppressed by the Dram Shop Act, nor "advance the remedy" provided. *Iszler v. Jorda,* 80 N.W.2d 665, 667 (N.D. 1957). We conclude that the trial court's instruction erroneously specified that an intoxicated person's reasonably discernible symptoms of intoxication result from the use of alcoholic beverages.

The Meshefskis contend that the trial court erred in failing to instruct the jury in accordance with their request for a pattern jury instruction, N.D.J.I. 1009, which states that "[a] fact in dispute may be proved by either direct evidence or circumstantial evidence or by both" and defines the terms "direct evidence" and "circumstantial evidence." Because of our disposition of this appeal, we need not determine this issue. We note, however, that in a case such as this, where much of the evidence is by its nature circumstantial and the testimony is in sharp conflict, it may be preferable to give a circumstantial-evidence instruction. See *Wasem v. Laskowski,* 274 N.W.2d 219 (N.D.1979); *Leake v. Hagert,* 175 N.W.2d 675 (N.D.1970).

The judgment and the order denying a new trial are reversed and the case is remanded for a new trial.

ERICKSTAD, C.J., and LEVINE, MESCHKE and GIERKE, JJ., concur.