Jody L. BORN, individually, and Jody L. Born, as mother and natural guardian of Joseph J. Born, Jacob A. Born, Jessica E. Born, Jedediah K. Born, Joshua D. Born, Jeremiah B. Born, Jason N. Born, and Jeanette E. Born, Plaintiffs and Appellants,

v.

Dan MAYERS, Wheat–Land Elevator Corp., f/k/a Coprograin Elevator Corporation, d/b/a Rogers Grain, Defendants and Appellees.

Dan MAYERS, Defendant, Third–Party Plaintiff and Appellee,

v.

Kevin R. BORN and Jody L. Born, individually and d/b/a Rogers Bar & Cafe, and Todd Fuglestad, Third–Party Defendants.

Civ. No. 930330.

Supreme Court of North Dakota.

April 5, 1994.

Leo F.J. Wilking (argued), of Nilles, Hansen & Davies, Ltd., Fargo, for defendant and appellee Wheat–Land Elevator.

Steven L. Marquart (argued), of Cahill & Marquart, Moorhead, MN, for defendant, third-party plaintiff and appellee Dan Mayers.

Tyrone Patrick Bujold (argued), of Robins, Kaplan, Miller & Ciresi, Minneapolis, MN, for plaintiffs and appellants.

NEUMANN, Justice.

The United States District Court for the District of North Dakota certified, under Rule 47, N.D.R.App.P., the following questions of law to this court:

"I. Does the North Dakota Dram Shop Act, section 5–01–06.1 of the North Dakota Century Code, create a right of action against a party not engaged in the business of selling intoxicating liquor, who gives another an intoxicating liquor as an act of hospitality or social courtesy?

"II. Does the North Dakota Dram Shop Act, section 5–01–06.1 of the North Dakota Century Code, create a right of action against a party not engaged in the business of selling intoxicating liquor, who gives another an intoxicating liquor without direct pecuniary gain, but nevertheless in an attempt to promote business good will?"

Our answer to both questions is yes.

The federal court submitted a statement of facts, which we quote here in relevant part:

"The events giving rise to this lawsuit occurred on August 30 and 31, 1990, and culminated with an injury to Kevin R. Born (Born). Sometime after he had been struck in the head by Todd Fuglestad (Fuglestad) in the early morning hours of August 31, Born suffered a stroke. The facts relevant to the questions presented concern the events leading up to the altercation between Born and Fuglestad.

"At the time of his injury, Born, along with his wife Jody L. Born (Jody or plaintiff), owned and operated the Rogers Bar & Cafe (Rogers Bar).

"... [Mayers] was employed in Rogers as an elevator manager for Wheat–Land Elevator Corp. (Wheat–Land) on August 30, a position he had held since July, 1989....

"Mayers' house in Rogers was provided by Wheat–Land and he was allowed to live there as part of his compensation. As part of his position as manager, Mayers was authorized to promote his employer's good will by entertaining customers and people in the community. While at the Rogers Bar on August 30, Mayers bought drinks for bar patrons, including a drink for Fuglestad. The drink was served to Fuglestad by Born or one of his employees. Mayers charged the drinks to the account of Wheat–Land. Wheat–Land paid the account when Jody Born submitted the statement to it.

\* \* \* \* \* \*

"Mayers, Fuglestad, Born, and the Amann brothers went to Mayers' house when the Rogers Bar closed. The group brought a case of beer from the Rogers Bar with them. When they arrived at the house, the group sat around Mayers' kitchen table and talked.

\* \* \* \* \* \*

"The group had been at Mayers' house for approximately an hour when Fuglestad struck Born in the face with the back of his hand. Fuglestad apparently had become agitated when Born started discussing Fuglestad's unpaid bar account in front of the group. As a result of the blow, Born fell backward on his chair and hit the floor. Fuglestad stood up and had swung at Born again when Kim Amann intervened. Because of Amann's interference, the second blow grazed Born rather than hitting him squarely.

"After this altercation the group left Mayers' house and went their separate ways. Born's only injury from the altercation appeared to be a cut lip, and he walked home under his own power and went to sleep. The next day while at home Born suffered a stroke caused by a severed carotid artery wall in his neck, which choked off the blood supply to the left side of his brain. Born has been left with

minimal mental and physical capabilities as a result of the stroke.

"Jody Born, plaintiff and third-party defendant, initiated this diversity action in federal district court alleging that Mayers violated section 5–01–06.1 of the North Dakota Century Code by furnishing alcohol to an 'obviously intoxicated person,' who later caused an injury to her husband, Born. The plaintiff further alleges that Wheat–Land is vicariously responsible for Mayers' actions."

Section 5–01–06.1, N.D.C.C., states, in part:

*"Claim for relief for fault resulting from intoxication.* Every spouse, child, parent, guardian, employer, or other person who is injured by any obviously intoxicated person has a claim for relief for fault under section 32–03.2–02 against any person who knowingly disposes, sells, barters, or gives away alcoholic beverages to a person under twenty-one years of age, an incompetent, or an obviously intoxicated person, and if death ensues, the survivors of the decedent are entitled to damages defined in section 32–21–02."

█ The interpretation of a statute is a question of law, to be answered by the court. *Aanenson v. Bastien,* 438 N.W.2d 151 (N.D. 1989). Words used in any statute are to be understood in their ordinary sense unless a contrary intention plainly appears. Section 1–02–02, N.D.C.C. When a statute is clear and unambiguous the letter of the statute cannot be disregarded under the pretext of pursuing its spirit, because the legislative intent is presumed clear from the face of the statute. Section 1–02–05, N.D.C.C.; *Dist. One Republican Comm. v. Dist. One Democrat Comm.,* 466 N.W.2d 820 (N.D.1991). When statutory language is free from ambiguity, it is neither necessary nor appropriate to delve into legislative history to determine legislative intent. *See State v. Bower,* 442 N.W.2d 438 (N.D.1989). Section 5–01–06.1,

N.D.C.C., like its predecessor (Section 5–01–02.1, N.D.R.C.1943), is remedial in character and should be liberally construed to advance its remedy. Section 1–02–01, N.D.C.C.; *Iszler v. Jorda,* 80 N.W.2d 665 (N.D.1957).

█ We conclude that Section 5–01–06.1, N.D.C.C., is clear and free of ambiguity. It creates a cause of action against any person who knowingly provides alcoholic beverages to an obviously intoxicated person. The language could not be more clear that the claim for relief is against anyone, without limitation, who knowingly commits the prohibited conduct.

During oral argument the appellees' attorney urged us to construe this statute as allowing claims to be brought only against "professional merchants of alcohol." The clear language of this statute simply does not support such an interpretation.

Similar statutes in other jurisdictions have consistently been construed as unambiguously creating a cause of action against anyone committing the prohibited conduct. *Martin v. Watts,* 513 So.2d 958 (Ala.1987); *Ross v. Ross,* 294 Minn. 115, 200 N.W.2d 149 (1972) *compare Holmquist v. Miller,* 367 N.W.2d 468, 470 (Minn.1985) (subsequent legislative changes render the *Ross* decision "ineffective"); *Williams v. Klemesrud,* 197 N.W.2d 614 (Iowa 1972). The Supreme Court of Alabama in *Martin, supra,* 513 So.2d at 961, interpreting a statute substantively identical to Section 5–01–06.1, N.D.C.C., explains that the language clearly does not limit the class of defendants:

"We note that the legislature, in describing the conduct which will trigger the application of § 6–5–71,[1] has· employed words and phrases which have or suggest a general application: *'any* person who shall, by *selling, giving or otherwise disposing of* to another, contrary to the *provisions of law.'* Had the legislature intended to limit the class of persons against whom an action could be brought, the draftsmen could cer-

---

**1.** The Alabama statute, Code 1975, § 6–5–71(a), states:

"'Every wife, child, parent or other person who shall be injured in person, property or means of support by an intoxicated person or in consequence of the intoxication of any person

shall have a right of action against any person who shall by selling, giving or otherwise disposing of to another, contrary to the provisions of law, any liquors or beverages, cause the intoxication of such person for all damages actually sustained, as well as exemplary damages.'"

tainly have employed words much better suited to an expression of such an intent. If it was the intention to create a right of action against only that narrowly defined class of persons, i.e., 'commercial dispensers,' the draftsmen could have incorporated that term into the act. Or, they could have stopped with the words 'by selling.' They did not do that. Instead, they included the terms 'giving' and 'otherwise disposing of.' It is hard to imagine a phrase more expansive than 'otherwise disposing of.'"

■ In construing a statute, we presume that the Legislature did not intend an absurd or ludicrous result. *Resolution Trust Corp. v. Dickinson Econo–Storage*, 474 N.W.2d 50 (N.D.1991). The appellees assert that it is a ludicrous and absurd result to impose liability upon a social host who gratuitously provides alcoholic beverages to a friend or relative. We disagree. In construing a similar Minnesota statute as creating a claim against anyone, including a social host, the Minnesota Supreme Court explained in *Ross, supra*, 200 N.W.2d at 153, why this result is quite reasonable:

"Where liquor is furnished in a purely social setting, ordinarily it may be expected that the donor will take some precautions to determine the age of the recipient or his state of intoxication. While the act applies to those invited to wedding receptions and company picnics as well as to other gatherings where supervision may be onerous, no reason occurs to us why those who furnish liquor to others, even on social occasions, should not be responsible for protecting innocent third persons from the potential dangers of indiscriminately furnishing such hospitality."

To construe Section 5–01–06.1, N.D.C.C., as appellees' attorney has urged, "would neither 'suppress the mischief' sought to be suppressed by the Dram Shop Act, nor 'advance the remedy' provided." *Meshefski v. Shirnan Corp.*, 385 N.W.2d 474, 478 (N.D.1986),

quoting *Iszler v. Jorda, supra*, 80 N.W.2d at 667.

Also, the limitations our statute places upon liability preclude a ludicrous result when a social host is sued under the statute. The statute imposes liability only upon those persons "who knowingly" provide alcoholic beverages to a minor, an incompetent, or an "obviously intoxicated" person. The statute also expressly places the claim for relief "under section 32–03.2–02,"[2] thereby permitting the factfinder to compare the conduct or "fault" of all persons involved in the particular incident from which the claim arises. These limitations act as safeguards against indiscriminately imposing liability upon a person who gives someone else an alcoholic beverage.

■ We conclude that Section 5–01–06.1, N.D.C.C., creates a claim for relief against any person who knowingly provides alcoholic beverages to an obviously intoxicated person for any purpose, including acts of hospitality and acts to promote business good will.

QUESTIONS ANSWERED.

VANDE WALLE, C.J., NEUMANN, SANDSTROM and MESCHKE, JJ., and DONALD L. JORGENSEN, District Judge, concur.

DONALD L. JORGENSEN, District Judge, sitting in place of LEVINE, J., disqualified.

---

2. Section 32–03.2–02, N.D.C.C., provides in relevant part:

"Contributory fault does not bar recovery in an action by any person to recover damages for death or injury to person or property unless the fault was as great as the combined fault of all other persons who contribute to the injury, but any damages allowed must be diminished in proportion to the amount of contributing fault attributable to the person recovering."