**BERG TRANSPORT, INC., Respondent and Appellant,**

v.

**NORTH DAKOTA WORKERS COMPENSATION BUREAU,** Appellee,

and

**Robert Oller, Claimant.**

**Civil No. 950273.**

Supreme Court of North Dakota.

Jan. 30, 1996.

Alan Baker (argued) of Baker Legal Clinic, Fargo, for respondent and appellant.

Douglas W. Gigler (argued), Special Assistant Attorney General of Nilles, Hansen & Davies, Ltd., Fargo, for appellee.

NEUMANN, Justice.

Berg Transport, Inc., appeals from a judgment affirming an order by the North Dakota Workers Compensation Bureau awarding Berg's employee, Robert Oller, workers compensation benefits and charging Berg's experience rating for part of those benefits. We affirm.

In 1978, Oller was diagnosed with diabetes mellitus, and in 1982, he was diagnosed with slight neuropathy in his feet, due to the diabetes. On May 21, 1991, Oller sustained a laceration on his lower left leg during the course of his employment as a truck driver with Berg. Oller received six stitches for the laceration, and they were taken out on June 6, 1991. However, the laceration ultimately became infected, and on June 23, 1991, Oller collapsed at a truck stop in Ohio.

Oller was hospitalized in Ohio for six weeks. His treating physician, Dr. Chau-

dhary, diagnosed an acute septicemia infection and diabetic ketoacidosis. Dr. Chaudhary reported Oller's acute septicemia infection was due to the infection in his leg and "would not have progressed in the absence of leg injury. The leg injury substantially worsened and accelerated the progression of the diabetes mellitus along with the attending complications of peripheral neuropathy which became worse due to acute illness."

In August 1991, Oller returned to North Dakota and was treated by Dr. Klava, who reported Oller had "long-standing diabetes mellitus and associated severe polyneuropathy" with "[s]evere deconditioning secondary" to his recent illness. Dr. Klava admitted Oller to a hospital for intensive supervised rehabilitative therapy. Oller was discharged from the rehabilitation unit in September 1991, but continued a prolonged rehabilitation program to improve his neuropathy and functions.

The Bureau accepted liability for Oller's claim and awarded him associated medical expenses and disability benefits for the May 1991 work injury. In February 1993, the Bureau decided Oller's rehabilitation had progressed to a point where his current condition was not the result of his May 1991 work injury and issued an order denying him disability benefits beyond those paid from June 24, 1991 through October 28, 1992. Oller requested a rehearing. Berg also requested a rehearing, contending Oller's claim expenses incurred after the stitches were removed on June 6, 1991, should not be charged to its experience rating, because those expenses were not related to the May 1991 injury, and, instead, were the direct and proximate result of his diabetes and related conditions.

After a formal hearing, the Bureau accepted liability for Oller's medical expenses through August 21, 1992, and disability benefits through October 28, 1992. The Bureau charged Berg's experience rating for the acute phase of Oller's injury, which it determined was not to exceed six months from Oller's May 21, 1991 work injury. The district court affirmed the Bureau's order, and Berg appealed.

On appeal the dispositive issue involves how the charges for Oller's claim expenses should be apportioned between Berg's experience rating and the Bureau's subsequent injury fund. Berg contends the claim expenses incurred after Oller's stitches were removed on June 6, 1991, should have been charged to the Bureau's subsequent injury fund under N.D.C.C. § 65–04–18. Relying on medical evidence that Oller's preexisting diabetes increased his susceptibility to septicemia, Berg asserts only the claim expenses incurred before the stitches were removed were "solely by reason of" Oller's May 1991 work injury and not from a combination of the laceration and his diabetes.

■■■ We review the Bureau's decision under well-established standards:

"Under N.D.C.C. § 28–32–21, our review of the bureau's decision is governed by N.D.C.C. § 28–32–19. We affirm the bureau's decision unless its findings of fact are not supported by a preponderance of the evidence, its conclusions of law are not supported by its findings of fact, its decision is not supported by its conclusions of law, or its decision is not in accordance with the law.... In considering whether the bureau's findings of fact are supported by a preponderance of the evidence, we exercise restraint and do not make independent findings of fact or substitute our judgment for the bureau's determination.... Our review of the bureau's findings of fact is limited to whether a reasoning mind could have reasonably determined that its findings were proven by the weight of the evidence from the entire record." *Otto v. North Dakota Workers Compensation Bureau,* 533 N.W.2d 703, 706 (N.D.1995) (Citations omitted).

Section 65–04–18, N.D.C.C., provides for the apportionment of compensation charges to an employer's experience rating and the Bureau's subsequent injury fund. *Johnson v. North Dakota Workmen's Compensation Bureau,* 344 N.W.2d 480, 483 (N.D.1984). Section 65–04–18, N.D.C.C., says:

"Whenever a subsequent injury or aggravation of a previous injury or preexisting

condition occurs to an employee, the risk of the employer for whom such person was working at the time of such subsequent injury or aggravation shall be charged only with the amount of the awards resulting from such subsequent injury or aggravation. Whenever such subsequent injury or aggravation results in further disability or an aggravation of a preexisting injury or condition, the compensation which is in excess of the amount to which the injured employee would have been entitled solely by reason of the subsequent injury or aggravation shall be charged to the subsequent injury fund and not to the classification or the risk to which the subsequent injury or aggravation is charged."

■ The interpretation of a statute is a question of law. *E.g., Born v. Mayers,* 514 N.W.2d 687, 689 (N.D.1994). Our primary goal when construing a statute is to ascertain the Legislature's intent. *E.g., State ex rel. Sprynczynatyk v. Mills,* 523 N.W.2d 537, 540 (N.D.1994). When a statute is clear and unambiguous, the letter of the statute cannot be disregarded. *Born,* 514 N.W.2d at 689.

■ A second or subsequent injury fund serves two primary purposes under workers compensation law. First, it protects employees because it provides full compensation to a previously impaired worker who suffers a subsequent work injury by apportioning claim expenses between the current employer's experience rating and a subsequent injury fund. 2 Larson's Workmen's Compensation Law ¶ 59.31(a) and 59.32 (1995). Second, it encourages employers to hire previously impaired employees because the apportionment scheme charges an employer's experience rating only for injuries attributable to the employer's work environment. *Id.*

Those dual purposes are served by the plain language of N.D.C.C. § 65–04–18. The first sentence declares the experience rating for an employer of a subsequently injured employee shall be charged only with the amount of awards resulting from the subsequent injury. The second sentence states if a subsequent injury results in aggravation of a preexisting condition, the compensation in excess of the amount to which the injured

employee would have been entitled solely by reason of the subsequent injury shall be charged to the subsequent injury fund and not to the employer's experience rating. Under the second sentence, claim expenses for benefits the employee would have been entitled "solely by reason of" a subsequent injury are charged to the employer's experience rating and expenses for benefits in excess of that amount are charged to the Bureau's subsequent injury fund.

■ Here, the Bureau found Oller's acute septicemia infection originated in the laceration and concluded, even if he had not been affected by a preexisting diabetic condition, he would have been disabled by the infected laceration for at least six months. The Bureau decided, as of October 1992, Oller's disability could no longer be traced to the May 1991 work injury. The Bureau heard extensive medical evidence about the effect of diabetes on septicemia. There was medical evidence Oller's septicemia infection originated in the laceration and could have developed in a person without diabetes. Although there was evidence Oller's diabetes contributed to his acute septicemia infection which, in turn, accelerated his underlying diabetic neuropathy, the Bureau decided "[a]bsent Oller's diabetic disease and diabetic neuropathy, Oller would likely have remained disabled for three to six months" and charged Berg's experience rating for claim expenses incurred within six months of the laceration.

We cannot say a reasoning mind could not reasonably have made the Bureau's decision. We, therefore, conclude the Bureau's findings are supported by a preponderance of the evidence. Under N.D.C.C. § 65–04–18 and the facts found by the Bureau, the Bureau properly charged Berg's experience rating for claim expenses incurred within six months of the laceration.

The Bureau's decision is affirmed.

VANDE WALLE, C.J., and LEVINE, SANDSTROM and MESCHKE, JJ., concur.