ROGER M. MARTINSON v. MONTICELLO MUNICIPAL
LIQUORS AND ANOTHER.
MONTE CLUB, INC., RESPONDENT.

209 N. W. 2d 902.

July 20, 1973—No. 43620.

49

*Anderson & Christopherson* and *Charles W. Anderson,* for appellant.

*Carroll, Cronan, Roth & Austin* and *Robert M. Austin,* for respondent.

Heard before Knutson, C. J., and Todd, MacLaughlin, and Olson, JJ.

MacLAUGHLIN, JUSTICE.

We have granted discretionary review of an order granting summary judgment in favor of defendant Monte Club, Inc. We affirm.

On either November 11 or 12, 1970, plaintiff, Roger M. Martinson, was injured when a pickup truck in which he was a passenger left the road. At the time of the accident, the truck was being driven by its owner, one Duane Bolme. Plaintiff sued defendant Monte Club, Inc., under the Civil Damage Act, Minn. St. 340.95, alleging that defendant's illegal sale of liquor to Bolme resulted in Bolme's intoxication and plaintiff's injuries.[1]

---

[1] Monticello Municipal Liquors was also a defendant. The appeal from the ruling in its favor has been dismissed by plaintiff.

The trial court granted defendant's motion for summary judgment on the grounds that plaintiff had no cause of action under the statute because he was guilty of complicity in actively and knowingly participating in furnishing intoxicating liquor to Bolme at a time when he was intoxicated.

Plaintiff's testimony in his pretrial deposition is the principal source of the facts on which this action is based. Plaintiff and Bolme had met only a few days before the accident on a job at St. Cloud, Minnesota. On the day of the accident, they left work at about 3 p.m. and, together with two fellow employees, went to a bar in Sauk Rapids where they cashed their paychecks and bought "rounds" of drinks for each other, taking turns paying for each round. Plaintiff was drinking whiskey and 7-Up, and Bolme was first drinking wine and 7-Up but soon switched to whiskey and 7-Up. Plaintiff testified that they had at least six or seven drinks in the Sauk Rapids bar with the two fellow employees. At about 4:30 p.m., the two employees left, but plaintiff and Bolme were joined by two other fellow employees and had at least one or two additional drinks with them. At about 7 p.m., immediately after eating supper in a nearby restaurant, plaintiff and Bolme set out in Bolme's pickup truck for Monticello to find a mutual friend who they thought lived there. Plaintiff testified that they stopped in "three or four or five places" along the way to Monticello and had "[m]aybe one, two, three, whatever it was," drinks in each place. He testified they took turns buying drinks for each other as they went along. Plaintiff testified that when they arrived at Monticello at 10:30 p.m. they "could have" gone to the Monticello Municipal Liquors, but he could not positively recall whether they did. In any event, he said that they did go to the Monte Club in Monticello where they had "three or four drinks, whatever it was," again buying rounds for each other, and that each ate a steak sandwich. While at the Monte Club, Bolme offered to "buy the house a drink," but plaintiff told the bartender to "forget it."

Plaintiff testified that during most of the day he did not particularly notice any effects on Bolme caused by the drinking because "I didn't know the guy well enough to know whether he was feeling it or not." However, plaintiff also said he "didn't think [Bolme] had really had so much to drink until he decided to buy that drink for the house." In spite of that clear indication of Bolme's condition, plaintiff and Bolme continued their pattern of buying and drinking intoxicating liquor. Plaintiff testified:

"Q. Was Duane Bolme served any intoxicating liquor after he made the offer to buy the remaining people in the room a drink?

"A. Yes, he was served after that. I don't know, one or two or three drinks, whatever we had. It was during the course of the meal."

Plaintiff testified that he consumed the same number of drinks that evening as Bolme and that Bolme was not drinking faster and ordering extra drinks for himself. He also testified that throughout the evening they continued the practice of alternately buying drinks for each other and that they each had 15 to 20 drinks.

When they left the Monte Club about midnight, Bolme hooked the bumper of his pickup truck onto the club's canopy. He then drove so fast that plaintiff asked to be let out. Shortly thereafter, the truck slid on a curve and left the road. Plaintiff suffered injuries to his back in the accident.

At the time of the hearing on the motion for summary judgment, plaintiff produced an affidavit of Duane Bolme in which Bolme stated that he had purchased several drinks for himself at the Monte Club following the meal that he and plaintiff ate at the club. He said he purchased the drinks just prior to their departure from the club. Bolme also stated that he was "becoming very intoxicated at that point" and that he hadn't felt the effects of the alcoholic beverages until he consumed those drinks.

Summary judgment is proper only when there is no genuine

issue as to any material fact and the party is entitled to judgment as a matter of law. Rule 56.03, Rules of Civil Procedure. Accordingly, we must determine if there is a genuine issue as to a material fact.

The Civil Damage Act, also known as the Dramshop Act, Minn. St. 340.95, provides in part:

"Every husband, wife, child, parent, guardian, employer, or other person who is injured in person or property, or means of support, by any intoxicated person, or by the intoxication of any person, has a right of action, in his own name, against any person who, by illegally selling, bartering or giving intoxicating liquors, caused the intoxication of such person, for all damages, sustained * * *."

Pursuant to that statute, plaintiff is suing defendant, alleging that defendant illegally sold intoxicating liquor to Bolme, causing Bolme's intoxication which, in turn, resulted in plaintiff's injuries. The sale is alleged to be illegal under § 340.73, subd. 1, which forbids the sale of intoxicating liquor to "any intoxicated person." Defendant argues that since plaintiff was Bolme's drinking companion and since he bought many drinks for Bolme, some of them at a time when plaintiff knew or should have known that Bolme was intoxicated, he should not be allowed to recover from defendant for injuries caused by Bolme's intoxication.

Although there is no statutory language defining the effect of a plaintiff's complicity, this court has limited the benefits of the Civil Damage Act, § 340.95, to "innocent" third persons. Heveron v. Village of Belgrade, 288 Minn. 395, 181 N. W. 2d 692 (1970). Thus, a person who voluntarily becomes intoxicated may not recover for injuries received as a result of his own intoxication. Randall v. Village of Excelsior, 258 Minn. 81, 103 N. W. 2d 131 (1960); Cavin v. Smith, 228 Minn. 322, 37 N. W. 2d 368 (1949). Similarly, a plaintiff may not recover who knowingly and actively participates in the events leading to the intoxica-

tion of a known minor who subsequently causes his injuries. Turk v. Long Branch Saloon, Inc. 280 Minn. 438, 159 N. W. 2d 903 (1968).

Even where the minor's age is not known, complicity bars recovery. In Heveron v. Village of Belgrade, *supra*, the plaintiffs purchased several "rounds" of alcoholic beverages for a minor. The minor did not appear to be intoxicated. The plaintiffs, who neither knew nor inquired of the minor's age, were subsequently injured while riding in an automobile driven by the minor. This court held that the Civil Damage Act, § 340.95, does not afford a remedy to persons who have been injured by the intoxication of a minor where such persons have themselves actively participated in furnishing intoxicating liquor to the minor without knowing that such person was a minor and without making inquiry as to his age.

However, not every form of contribution to the drinking companion's intoxication bars recovery. Mere passive participation does not amount to complicity. In Hempstead v. Minneapolis Sheraton Corp. 283 Minn. 1, 166 N. W. 2d 95 (1969), the plaintiff and her sister, both minors, visited several bars together. The plaintiff did not buy her sister any drinks; the sister's drinks were paid for either by the sister herself or by third parties. Although they traveled between bars together in the sister's car, the plaintiff and her sister separated and visited with different friends at each bar. The plaintiff was injured when the car driven by her sister ran into the rear end of a truck. We held that suit by the plaintiff against the sellers of the liquor under § 340.95 was *not* barred by complicity, stating (283 Minn. 9, 166 N. W. 2d 99):

"\* \* \* As long as the party seeking to recover has not procured or in other ways furnished liquor to the person who becomes intoxicated, but is simply a companion, we think prohibiting recovery would be applying the statute in a way the legislature did not intend."

54

Denial of recovery in these cases is based upon the judgment that it is not the purpose of the Civil Damage Act, § 340.95, to allow recovery to one who is himself a wrongdoer and that, accordingly, such a wrongdoer does not fall within the class of those to whom the statute gives a cause of action. For example, in Turk v. Long Branch Saloon, Inc. 280 Minn. 438, 442, 159 N. W. 2d 903, 906, we stated:

"* * * [T]he protection to the public afforded by § 340.95 was not intended by the legislature to be extended to persons who participate knowingly and affirmatively in the illegal sale, bartering, or gift of the intoxicating liquor. To hold otherwise, we believe, would be to permit one who has been an intentional accessory to the illegality to shift the loss resulting from it to a person no more responsible for the same damage than he himself has been. * * * [A] person who buys drinks for an obviously intoxicated person, or one whom he knows to be a minor, is at least as much the cause of the resulting or continued intoxication as the bartender who served the consumer illegally. Finally, having declared that the person who becomes intoxicated as a result of illegal sale, barter, or gift cannot recover, how can we reasonably attribute to the legislature an intent to allow recovery to the participating accessory who, in some cases at least, may be as much or more responsible for the violation of the liquor laws than the one who consumes the intoxicant?"

The Civil Damage Act, § 340.95, is both penal and remedial in nature, intended by the legislature both to suppress the illegal furnishing of liquor and to provide a remedy. Ross v. Ross, 294 Minn. 115, 200 N. W. 2d 149 (1972); Heveron v. Village of Belgrade, *supra*; Village of Brooten v. Cudahy Packing Co. 291 F. 2d 284 (8 Cir. 1961). Barring recovery by a wrongdoer by holding that the wrongdoer is not among those persons to whom the legislature intended to provide a remedy advances those dual purposes. Heveron v. Village of Belgrade, *supra*.

Our previous "drinking companion" cases have involved mi-

nors. In this case, both plaintiff and Bolme were adults. However, we have no hesitancy in holding that the complicity defense applies as well where the drinking companion is an adult as where he is a minor. In Heveron we said:

"* * * Decisions interpreting dramshop legislation have consistently recognized complicity as a defense, reasoning that the statutes were intended to benefit only innocent third parties." 288 Minn. 398, 181 N. W. 2d 694.

Mjos v. Village of Howard Lake, 287 Minn. 427, 178 N. W. 2d 862 (1970), in interpreting § 340.73, subd. 1, which proscribes selling or furnishing liquor to "any intoxicated person," held that a seller of intoxicating liquor must take such affirmative steps as a reasonably prudent man would regard as adequate to ascertain whether the conduct of the prospective purchaser manifests such loss of control of actions or motions as to imply intoxication. We believe that under § 340.73, subd. 1, the drinking companion should be held to the same standard as the seller. We hold that one who furnishes intoxicating liquor to a drinking companion must take such affirmative steps as a reasonably prudent man would regard as adequate to determine whether the companion is intoxicated at the time the intoxicating liquor is furnished.[2] We said in Mjos (287 Minn. 430, 178 N. W. 2d 865) that

---

[2] Subsequent to the Mjos decision, the legislature added subd. 1(a) to Minn. St. 340.14 (L. 1971, c. 264, § 1). Subd. 1(a) provides: "No intoxicating liquor shall be sold, furnished, or delivered for any purpose to any minor or to any person obviously intoxicated or to any of the persons to whom sale is prohibited by statute." Section 340.73, subd. 1, continues to read: "It shall be unlawful for any person * * * to sell, give, barter, furnish, deliver * * * any spirituous, vinous, malt, or fermented liquors in any quantity, for any purpose, whatever, to any minor person, or to any intoxicated person * * *."

The accident in this case occurred before the addition of subd. 1(a) to § 340.14. The effect, if any, of that amendment upon the Mjos decision and this decision will have to be determined when a case arises subsequent to the amendment.

56

intoxication for this purpose means "intoxication which is disclosed by the behavior of the [person to whom the intoxicating liquor is furnished]" and that the statute applies "if the intoxication is observable in the appearance or behavior of the person to whom the intoxicating liquor is furnished." 287 Minn. 432, 178 N. W. 2d 867.

Applying these rules to this case, we hold that the trial court did not err in granting summary judgment. Plaintiff and Bolme had been drinking intoxicating liquor in several different establishments on the day of the accident and had each consumed at least 15 to 20 drinks. Plaintiff testified that when Bolme offered to buy a drink for the house at the Monte Club, it indicated to plaintiff that Bolme was drinking too much but that, nevertheless, after Bolme had made that offer the two men continued to buy two or three additional rounds for each other. The affidavit of Bolme in no way changes these facts. Therefore, we hold, as a matter of law, that a reasonably prudent man would have concluded from Bolme's conduct that he was intoxicated, and the acts of plaintiff in continuing to participate in furnishing intoxicating liquor to Bolme constitute complicity which deprives plaintiff of standing as an innocent third party. Thus, plaintiff is not entitled to benefits under the Civil Damage Act, and the trial court properly granted defendant's motion for summary judgment.

Affirmed.

MR. JUSTICE YETKA and MR. JUSTICE SCOTT, not having been members of this court at the time of the argument and submission, took no part in the consideration or decision of this case.