Jon B. AANENSON, Plaintiff
and Appellant,

v.

James E. BASTIEN, and Terry Kopp
Bastien, d/b/a The Lower 48,
Defendants and Appellees.

Civ. No. 880313.

Supreme Court of North Dakota.

March 21, 1989.

Stefanson, Landberg & Plambeck, Moorhead, Minn., for plaintiff and appellant; argued by Dan D. Plambeck.

Jeffries, Olson & Flom, Moorhead, Minn., for defendants and appellees; argued by Erik J. Askegaard.

ERICKSTAD, Chief Justice.

Jon B. Aanenson commenced a dram shop action against James E. Bastien and Terry Kopp Bastien, d/b/a The Lower 48, to recover damages for injuries he sustained in a motorcycle accident that occurred on October 26, 1985. Aanenson alleged that The Lower 48 served alcoholic beverages to Brian Wolfgram when he was already obviously intoxicated and that after Wolfgram left The Lower 48, he drove his motorcycle east on Cass County 14 and collided with the motorcycle operated by Aanenson which was stopped at or near the intersection of Highway 81.

This action was venued in the District Court for Cass County, East Central Judicial District, North Dakota, and was duly assigned to a district court judge. Upon defendant's motion for summary judgment, the court entered an order dismissing plaintiff's action and a judgment was entered accordingly. The court reasoned that "complicity" was a defense to a dram shop action in North Dakota. As Aanenson had purchased drinks for Wolfgram, he actively participated in Wolfgram's intoxication and was, therefore, a non-innocent party and precluded, as a matter of law, from recovery under North Dakota's Dram Shop Act. Aanenson has appealed from the judgment dismissing his complaint. We reverse and remand.

The issues on appeal are asserted to be:

1. Whether or not "complicity" is a defense to Aanenson's dram shop action; and

2. Whether or not Aanenson's conduct in purchasing rounds for the intoxicated person constituted complicity so as to bar recovery under the Dram Shop Act.

Neither party disputes the facts pertinent to this appeal. Early in the afternoon on October 26, 1985, Aanenson and Wolfgram met at Rick's Bar in Fargo, North Dakota. They remained together until the accident occurred at approximately 7:30 p.m. It was apparently a pleasant fall day and the two decided to drive around on their motorcycles. Along the way, they stopped at four additional bars, namely: Kirby's Bar and Ralph's Corner, both in Moorhead, Minnesota, the Knickerbocker Liquor Locker in Hickson, North Dakota, and The Lower 48 near Wild Rice, North Dakota. At Rick's, Kirby's, and Ralph's, Aanenson and Wolfgram, together with a mutual friend, Randy Winroth, took turns paying for the drinks they ordered. At the bar in Hickson and at The Lower 48, Aanenson and Wolfgram continued that practice.

Aanenson and Wolfgram left The Lower 48 at approximately the same time, with Aanenson driving his motorcycle in the lead. Wolfgram was having a bit of trouble with his motorcycle and Aanenson pulled ahead. Aanenson stopped at the stop sign at the intersection of County Road 14 and Highway 81. Wolfgram collided with him from behind.

As a result of his injuries, Aanenson brought a dram shop action against The Lower 48. The parties stipulated that The Lower 48 could commence "a Third–Party impleader action pursuant to Rule 14" of the North Dakota Rules of Civil Procedure,

against the Knickerbocker Liquor Locker and Ralph's Corner.

At the time of the accident which occurred on October 26, 1985, North Dakota's dram shop statute was codified in section 5–01–06 of the North Dakota Century Code as follows:

> "*Recovery of damages resulting from intoxication.* Every spouse, child, parent, guardian, employer, or other person who is injured by any intoxicated person, or in consequence of intoxication, has a claim for relief against any person who caused such intoxication by disposing, selling, bartering, or giving away alcoholic beverages contrary to statute for all damages sustained, and in the event death ensues, the survivors of the decedent are entitled to damages defined in section 32–21–02." [1]

The "contrary to statute" requirement is fulfilled by violation of section 5–01–09, N.D.C.C., which reads:

> "*Delivery to certain persons unlawful.* Any person delivering alcoholic beverages to a person under twenty-one years of age, an habitual drunkard, an incompetent, or an intoxicated person is guilty of a class A misdemeanor, subject to the provisions of section 5–01–08, 5–01–08.1 and 5–01–08.2."

The question of whether or not complicity constitutes a defense to a dram shop action is one of first impression in North Dakota. In states that apply the rule of complicity, it has been held that: "[O]ne who actively contributes to or procures the intoxication of the inebriate is precluded from recovery." *Nelson v. Araiza,* 69 Ill. 2d 534, 14 Ill.Dec. 441, 445, 372 N.E.2d 637, 641 (1977).

---

1. Section 5–01–06, N.D.C.C., was repealed by the 1987 Legislature. Section 5–01–06.1, N.D.C.C., now reads:

"*Claim for relief for fault resulting from intoxication.* Every spouse, child, parent, guardian, employer, or other person who is injured by any obviously intoxicated person has a claim for relief for fault under section 32–03.2–02 against any person who knowingly disposes, sells, barters, or gives away alcoholic beverages to a person under twenty-one years of age, an incompetent, or an obviously intoxicated person, and if death ensues, the survivors of the decedent are entitled to damages defined in section 32–21–02. No claim for relief pursuant to this section may be had on behalf of the intoxicated person nor on behalf of the intoxicated person's estate or personal representatives; nor may a claim for relief be had on behalf of an adult passenger in an automobile driven by an intoxicated person or on behalf of the passenger's estate or personal representatives."

■ The interpretation of a statute is a question of law, fully reviewable by the Court. *Ladish Malting Co. v. Stutsman County*, 351 N.W.2d 712 (N.D.1984). In determining whether or not complicity bars recovery under section 5–01–06, N.D.C.C., we look first to the language of the statute. *Milbank Mut. Ins. Co. v. Dairyland Ins. Co.*, 373 N.W.2d 888 (N.D.1985). "Words used in any statute are to be understood in their ordinary sense, unless a contrary intention plainly appears." *Wills v. Schroeder Aviation, Inc.*, 390 N.W.2d 544, 545 (N.D.1986); section 1–02–02, N.D.C.C. An objective reading of section 5–01–06, N.D.C.C., does not plainly indicate that complicity bars recovery.

"If a statute is clear and unambiguous, the letter of the statute cannot be disregarded under the pretext of pursuing its spirit because the Legislative intent is presumed clear from the face of the statute." *Milbank, supra*, 373 N.W.2d at 891; section 1–02–05, N.D.C.C. Section 5–01–06, N.D.C.C., clearly allows "[e]very spouse, child, parent, guardian, employer, or other person" to bring a claim for relief and unambiguously provides two grounds for recovery of damages: (1) injury "by an intoxicated person"; or (2) injury "in consequence of intoxication." *Meshefski v. Shirnan Corp.*, 385 N.W.2d 474 (N.D.1986). In *Iszler v. Jorda*, 80 N.W.2d 665, 667 (N.D. 1957), this Court said:

"The statute authorizes an award of damages not only for certain injuries by an intoxicated person but also for injuries in consequence of the intoxication of any person."

When the wording of the statute is clear and free of all ambiguity, we have said that it is improper for the courts to attempt to construe the provisions so as to legislate additional requirements or proscriptions which the words of the provisions do not themselves provide. *Haggard v. Meier*, 368 N.W.2d 539 (N.D.1985); section 1–02–05, N.D.C.C. The legislature made no exception for complicity in section 5–01–06, N.D.C.C.

■ A statute must be construed to fulfill the objective and intent of the legislature. *Larson v. Wells County Water Resource Board*, 385 N.W.2d 480 (N.D.1986). "We believe the Legislature intended to fix liability on the maker of an illegal sale where such sale causes the intoxication of the person doing the damage." *Fladeland v. Mayer*, 102 N.W.2d 121, 123 (N.D.1960).

In *Iszler v. Jorda*, 80 N.W.2d at 667–668, we said:

"The liability created by the Civil Damage Act has no relation to any common law liability, or to any theory of tort. It was the intention of the legislature to create liability in a class of cases where there was no liability under the common law. The act is remedial in character and should be construed to suppress the mischief and advance the remedy. It clearly gives a cause of action to every person who is injured in person, property or means of support as the result of the intoxication of any person when the intoxication was caused by the use of alcoholic beverages sold or given away in violation of law." [Cites omitted.]

While this is the first time this Court has been asked to consider whether or not complicity is a defense to a dram shop action, we have previously determined that comparative negligence provides no defense to such claim. In *Feuerherm v. Ertelt*, 286 N.W.2d 509, 511 (N.D.1979), we said:

"This statute is sui generis. It creates an entirely new cause of action unrelated to and different from any other. *Iszler v. Jorda, supra*. By enacting this statute it was the intention of our Legislature to create liability in a class of cases where no liability existed under common law. This liability is imposed not upon finding fault in the sense of any wrongful intent or negligent conduct on the part of the defendant, but upon finding a violation of Section 5–01–09, N.D.C.C., which prohibits the sale of alcoholic beverages to an intoxicated person, among others. Because liability was imposed upon the Nu–Bar for violating Section 5–01–09, N.D.C.C., without regard to wrongful intent or negligent conduct on its part, there can be no defense based upon the alleged negligent conduct of the

plaintiff, Ernest Feuerherm. We therefore hold that the North Dakota Comparative Negligence Law, Section 9–10–07, N.D.C.C., does not apply to actions brought under the Dram Shop Act. By so holding we are in accord with other jurisdictions that have held that contributory negligence, comparative negligence, or assumption of risk are not defenses to a dram-shop action. *Turk v. Long Branch Saloon, Inc.*, 280 Minn. 438, 159 N.W.2d 903 (1968); *Overocker v. Retoff*, 93 Ill.App.2d 11, 234 N.E.2d 820 (1968); *Genesee Merchants Bank & Trust Co. v. Bourrie*, 375 Mich. 383, 134 N.W.2d 713 (1965)."

The negligent conduct alleged to have been committed by Feuerherm was that he and the intoxicated person were involved in an altercation at a bar, rendering Feuerherm permanently and totally disabled from working at his trade as a brick mason. *Feuerherm*, 286 N.W.2d at 510. The complicitous conduct alleged to have been committed by Aanenson in this case was that he, an adult, took turns buying drinks with his friend, an adult, who later drove his motorcycle so that it collided with the motorcycle Aanenson was driving.

In *Feuerherm* we held that the alleged conduct was not a defense and was thus not even to be considered. In the instant case, difficult as it is to distinguish the conduct of the parties, The Lower 48 contends Aanenson's conduct should be a complete bar to his recovery in this case, notwithstanding the same statute applies to both cases.

A conceivable distinction is that "[c]omplicity is not predicated on the plaintiff's contribution to his injury but only upon his contribution to the inebriate's intoxication." *Nelson v. Araiza, supra,* 14 Ill.Dec. at 445, 372 N.E.2d at 641. We do not accept that distinction as a justification for, in effect, legislating that the conduct of the claimant is a defense to a dram shop action under some circumstances but not under others.

As is the case with the entire North Dakota Century Code, our Dram Shop Act is to be construed pursuant to section 1–02–01, N.D.C.C., which provides:

"*Rule of construction of code.* The rule of the common law that statutes in derogation thereof are to be construed strictly has no application to this code. The code establishes the law of this state respecting the subjects to which it relates, and its provisions and all proceedings under it are to be construed liberally, with a view to effecting its objects and to promoting justice."

In light of this statutory rule of construction, this Court has liberally construed section 5–01–06, N.D.C.C., to give to every person injured by any intoxicated person a cause of action against any person who, by selling, bartering, or giving away alcoholic beverages contrary to law, has caused the intoxication of such person.[2]

In *Iszler v. Jorda, supra,* 80 N.W.2d 665, the defendant dram shop illegally sold alcoholic beverages to a minor, resulting in his intoxication. While the minor was intoxicated, he lost control of his automobile and died as a result of the injuries he received in the crash. No mention was made as to whether or not the parents of the minor were involved in the purchase of the alcoholic beverages and they were allowed to recover damages under the Civil Damage Act.

"[T]he Legislature intended to fix liability on the maker of an illegal sale where such sale causes the intoxication of the person doing the damage. Thus the illegal sale must have been made to the person whose intoxication caused the damage complained of. Or such a sale must have been made to a person under such circumstances that the seller knew or had reasonable grounds to believe that the person to whom such sale was made would give or share such alcoholic beverage with the person whose intoxication caused the damages suffered." *Id.* at 123.

---

2. An action under the Civil Damage Act was not allowed in *Fladeland v. Mayer, supra,* 102 N.W.2d at 121, where the widow and infant daughter of a deceased minor brought an action against a liquor dealer to recover for the death of the deceased minor who was involved in an automobile accident as a result of drinking alcoholic beverages sold by the dealer to the minor companion of the deceased minor. No mention was made of the part the plaintiffs played, if any, in the intoxication of their decedent's minor companion. This Court found no liability under the Civil Damage Act, reasoning that:

In *Hanson v. Fledderman,* 111 N.W.2d 401 (N.D.1961), the plaintiff's husband went to the defendant's bar and drank beer for several hours. During the evening he became involved in several arguments, and about 9:30 p.m. was involved in a fight in which he received injuries from which he subsequently died. No mention was made as to whether or not the widow had accompanied her husband to the bar that night and she was allowed to recover damages for loss of services, support and society of her husband under the dram shop statute.

In *Wanna v. Miller,* 136 N.W.2d 563 (N.D.1965), the plaintiff was standing at the rear of his automobile, trying to jack up the left rear wheel so that the tire could be changed. He was struck by a vehicle driven by the intoxicated person, apparently a stranger, and suffered severe personal injuries and damage to his property. The plaintiff was allowed to recover money damages from the defendant tavern owner, having proved that the defendant was engaged in the business of selling alcoholic beverages, that he sold or delivered such beverages to an intoxicated person, and that the damages complained of resulted from the intoxication of the person who was sold, bartered, or given the alcoholic beverage.

In *Hastings v. James River Aerie No. 2337—Fraternal Order of Eagles,* 246 N.W.2d 747 (N.D.1976), a wife brought an action under the Dram Shop Act against three licensed liquor dealers for their sale or gift of alcoholic beverages to her husband when he was intoxicated. She alleged that this caused him to be convicted of the crime of second degree murder in the shooting death of a third person, resulting in his commitment to the State Penitentiary. No mention was made as to the part the plaintiff played, if any, in the intoxi-

cation of her husband and she was allowed to recover damages for loss of consortium.[3]

In *Feuerherm v. Ertelt, supra,* 286 N.W. 2d 509, Feuerherm was involved in an altercation with an intoxicated person at a bar, which resulted in injuries rendering Feuerherm permanently and totally disabled from working at his trade as a brick mason. Feuerherm and his wife brought dram shop actions against the two bars which had served the intoxicated person. No mention was made as to the part Feuerherm played in the intoxication of the third person, if any. The defendant dram shop argued that comparative negligence should apply to the action. This Court did not agree and allowed plaintiffs to recover.

In *Meshefski v. Shirnan Corp., supra,* 385 N.W.2d 474, the plaintiffs' son, Paul Meshefski, went to defendants' bar, as did Lorenzo Leal. While there, each man consumed an undetermined amount of beer. No mention was made as to whether or not the men were drinking together. Shortly after midnight, a fight broke out and Leal stabbed Meshefski in the heart, resulting in his death. The plaintiffs brought a dram shop action against the bar owners. There was testimony that Leal may have been intoxicated from the use of drugs and this Court held that:

> "[A] vendor of alcoholic beverages may be held liable for damage caused by an intoxicated person who was sold alcoholic beverages at a time when he exhibited outward manifestations of intoxication regardless of the cause of the intoxication. To hold otherwise would neither 'suppress the mischief' sought to be suppressed by the Dram Shop Act, nor 'advance the remedy' provided." *Id* at 478.

In *Ross v. Scott,* 386 N.W.2d 18 (N.D. 1986), the minor decedent's illegitimate son born after the minor's death, and the mi-

**3.** In *Hastings,* 246 N.W.2d 747 at 752, we also said:
> "Although we are not asked to determine in this case whether Mr. Hastings has a right to bring an action on his own behalf under the 'other person' phrase of Section 5-01-06, N.D. C.C., since it would appear that under the majority view such a phrase does not include the 'intoxicated person' [cites omitted], we

find it unnecessary to concern ourselves over possible double recovery from failure to require joinder of the intoxicated person."
In our view this statement is read much too broadly by the appellees when they imply that if the intoxicated person cannot bring an action against the dram shop neither can his drinking companion.

nor's father, brought an action for damages arising out of the death of the minor, Douglas Kanta, against several defendants, including the Williston Lodge No. 239, Loyal Order of Moose. Kanta had been drinking beer at the Moose Lodge the night he was killed. After leaving the Moose Lodge, Kanta was in a fatal collision with a semi-trailer. Disavowing any inference to the contrary that may be drawn from *Jore v. Saturday Night Club, Inc.*, 227 N.W.2d 889 (N.D.1975), this Court said that "[f]or liability under the Dram Shop Act to attach to an illegal sale of alcoholic beverages to a minor who becomes intoxicated, the minor need not have been intoxicated at the time of the sale." *Id.* at 22.

Bastien asks that we now limit recovery under the Dram Shop Act to "innocent" claimants, as do the jurisdictions that recognize the complicity doctrine. He urges that we apply the rule of *ejusdem generis* when interpreting section 5–01–06, N.D. C.C. Bastien argues that all the listed persons are "innocent" persons with some special relation to the person who may have been injured by any intoxicated person or in consequence of intoxication. Therefore, the "other person" referred to in section 5–01–06, N.D.C.C., must also be an "innocent" person.

In *Savelkoul v. Board of County Com'rs., Ward County*, 96 N.W.2d 394, 398 (N.D.1959), we approved application of the rule of *ejusdem generis.* We said that "[u]nder the principle of ejusdem generis, general words following particular and specific words are not given their natural and ordinary sense, standing alone, but are confined to persons and things of the same kind or genus as those enumerated. [Cites omitted.]" However, the rule is one of construction and is not applied automatically. See *Christman v. Emineth*, 212 N.W. 2d 543, 549 (N.D.1973), where we refused to apply the rule of "ejusdem generis" to exclude coal from the term "other materials" without a clear manifestation of the intent of the draftsmen. When there is no inconsistency between the specific factors and those based on the general statutory language, *ejusdem generis* does not apply.

*Owen of Georgia, Inc. v. Shelby County*, 648 F.2d 1084 (6th Cir.1981); 2A Sutherland Stat. Const. § 47.17, p. 166 (4th Ed. 1984).

The rule of *ejusdem generis* has been described as a manifestation of the bias towards strict construction of statutes in derogation of the common law. 2A Sutherland Stat. Const. § 47.18 p. 178 (4th Ed. 1984); 3 Sutherland Stat. Const. § 6202 p. 167 (3rd Ed.1943); *People v. Powell*, 280 Mich. 699, 274 N.W. 372 (1937) (applying *ejusdem generis* to strictly construe statute in derogation of common law). This narrowing concept runs contrary to the rule of construction provided by our legislature that statutes are to be liberally construed to effectuate their objectives and promote justice. Section 1–02–01, N.D.C.C.

When construing statutes, the rule of *ejusdem generis* may be used to carry out the intent of the legislature, but not to defeat or subvert that intent. *See Culotta v. Raimondi*, 251 Md. 384, 247 A.2d 519 (1968) (*ejusdem generis* was never intended to be employed to frustrate the purpose of a statute); *Smilack v. Bowers*, 167 Ohio St. 216, 147 N.E.2d 499 (1958) (*ejusdem generis* should not be followed to arrive at an intent different from that of the legislature); 82 C.J.S. *Statutes* § 332 at 664 (1953). Furthermore, when we interpret a statute, we presume that the legislature intended a just and reasonable result. *See* section 1–02–38(3), N.D.C.C. We have also said that a statute must be construed to avoid absurd and ludicrous results. *See,* e.g., *County of Stutsman v. State Historical Society*, 371 N.W.2d 321 (N.D.1985); and *Skoog v. City of Grand Forks*, 301 N.W.2d 404 (N.D.1981). We will therefore especially not apply *ejusdem generis* if such application leads to an absurd result.

We think it would be an absurd result if alcoholic beverage dealers could avoid liability for illegal sales to intoxicated customers depending upon whether the customers paid for their own drinks or took turns paying for each others drinks. Relieving the merchant of liability under the latter circumstance would not deter sales to intoxicated persons which is the objective of

the Dram Shop Act. Accordingly, we will not apply the rule of *ejusdem generis* in this case.

Furthermore, we find our reasoning in *Feuerherm* to be applicable to the issue of complicity as well as to comparative negligence. We said that "liability is imposed not upon finding fault in the sense of any wrongful intent or negligent conduct on the part of the defendant, but upon finding a violation of Section 5–01–09, N.D.C.C., which prohibits the sale of alcoholic beverages to an intoxicated person, among others." *Feuerherm v. Ertelt*, 286 N.W.2d at 511. As between the liquor merchant and a drinking companion, we believe the legislature intended the responsibility and liability for serving alcoholic beverages to an intoxicated person to fall on the merchant (the dram shop).

In *Feuerherm*, we noted that several other jurisdictions have held that comparative negligence is not a defense to a dram shop action. Those jurisdictions cited do, however, allow the defense of complicity, generally reasoning that it was not the purpose of the statutes to permit recovery by one who is himself a wrong doer, and that, accordingly, such a wrongdoer does not fall within the class of those to whom the statute gives a cause of action. *See Nelson v. Araiza, supra,* 372 N.E.2d 637; *Martin v. Heddinger,* 373 N.W.2d 486 (Iowa 1985); *Malone v. Lambrecht,* 305 Mich. 58, 8 N.W.2d 910 (1943); and *Turk v. Long Branch Saloon, Inc.,* 280 Minn. 438, 159 N.W.2d 903 (1968); Annot. 26 A.L.R.3d 1112 (1969).

Recognizing that these jurisdictions have, at times, had an influence on the development of caselaw in North Dakota, we will discuss the reasoning apparently underlying their sanction of the complicity doctrine. Several factors are pertinent to our discussion. The wording of the individual dram shop statutes, the construction courts have put upon those statutes, and the evolution of civil liability for illegal sales of alcoholic beverages all appear to contribute to their recognition of complicity as a defense to a dram shop action. For the reasons stated hereafter, the decisions of those jurisdictions do not convince us of the rightness of applying the complicity doctrine as a complete bar in this case.

The dram shop statutes in Iowa,[4] Michigan,[5] and Minnesota,[6] and to a certain ex-

---

**4.** The statute applied in *Martin v. Heddinger, supra,* 373 N.W.2d at 489, where the court stated that "a party who participates in the drinking activities during which the injuring party becomes intoxicated cannot recover under the dramshop act for injuries sustained as a result of such intoxication," read in pertinent part:

"Every husband, wife, child, parent, guardian, employer or other person who is injured in person or property or means of support by any intoxicated person or resulting from the intoxication of any person, has a right of action for all damages actually sustained, severally or jointly, against any licensee or permittee, who sells or gives any beer, wine, or intoxicating liquor to a person while the person is intoxicated, or serves a person to a point where the person is intoxicated. If the injury was caused by an intoxicated person, a permittee or licensee may establish as an affirmative defense that the intoxication did not contribute to the injurious action of the person." Iowa Code Ann. § 123.92 (West 1971).

**5.** The statute applied in *Kangas v. Suchorski,* 372 Mich. 396, 126 N.W.2d 803, 804 (1964), where the court stated that "[t]he intoxicated person himself and those who contributed to his intoxication have no right of action," read in pertinent part:

"*Unlawful sale, right of action for damages, survival of action; form of action; continuance of bond.*

"Every wife, husband, child, parent, guardian or other persons who shall be injured in person or property, means of support or otherwise, by an intoxicated person by reason of the unlawful selling, giving or furnishing to any such persons any intoxicating liquor, shall have a right of action in his or her name against the person who shall by such selling or giving of any such liquor have caused or contributed to the intoxication of said person or persons or who shall have caused or contributed to any such injury, and the principal and sureties to any bond given under this law shall be liable, severally and jointly, with the person or persons selling, giving or furnishing any spirituous, intoxicating or malt liquors as aforesaid...." Mich.Comp. Laws § 436.22 (1961).

**6.** The statute applied in *Turk v. Long Branch Saloon, Inc.,* 159 N.W.2d 903 (1968), and in *Martinson v. Monticello Municipal Liquors,* 297 Minn. 48, 209 N.W.2d 902 (1973), read as follows:

"*Injuries caused by intoxication, civil actions*

"Every husband, wife, child, parent, guardian, employer, or other person who is injured

tent, Illinois,[7] are somewhat similar to that of North Dakota. However, these courts are guided by their own rules of statutory construction. Additionally, all four jurisdictions have historically interpreted their dram shop statutes as limiting recovery to "innocent" third persons, even though none of the statutes make mention of such limitation.[8] *See Reget v. Bell*, 77 Ill. 593 (1875); *Engleken v. Hilger*, 43 Iowa 563 (1876); *Rosecrants v. Shoemaker*, 60 Mich. 8, 26 N.W. 794 (1886); and *Sworski v. Colman*, 204 Minn. 474, 283 N.W. 778 (1939), overruled on other grounds by *Strobel v. Chicago, Rock Island and Pacific R.R. Co.*, 255 Minn. 201, 96 N.W.2d 195, 200 (1959).

Iowa has stated that its dram shop statute should be liberally construed,[9] but

in person or property, or means of support, by any intoxicated person, or by the intoxication of any person, has a right of action, in his own name, against any person who, by illegally selling, bartering or giving intoxicating liquors, caused the intoxication of such person, for all damages, sustained; and all damages recovered by a minor under this section shall be paid either to such minor or to his parent, guardian, or next friend, as the court directs; and all suits for damages under this section shall be by civil action in any court of this state having jurisdiction thereof." Minnesota Statute § 340.95 (1927).

**7.** The statute applied in *Nelson v. Araiza, supra*, 14 Ill.Dec. at 445, 372 N.E.2d at 641, where the court stated that "one who actively contributes to or procures the intoxication of the inebriate is precluded from recovery," read in part:

"Every person who is injured in person or property by any intoxicated person, has a right of action in his own name, severally or jointly, against any person who by selling or giving alcoholic liquor, causes the intoxication of such person." Ill.Ann.Stat. ch. 43 § 135 (Smith–Hurd 1976).

**8.** In addition to actions brought under the dram shop laws, these jurisdictions have seen an evolution of civil liability for illegal sales of alcoholic beverages. The courts in Iowa, Illinois, Michigan, and Minnesota, all recognize that there was no liability at common law for transferring alcoholic beverages to other persons and that the dram shop statute was intended to provide the exclusive remedy for injuries caused by furnishing such beverages. *See Fuhrmăn v. Total Petroleum, Inc.*, 398 N.W.2d 807 (Iowa 1987); *Puckett v. Mr. Lucky's Ltd.*, 175 Ill.App.3d 355, 125 Ill.Dec. 93, 529 N.E.2d 1169 (1988); *Millross v. Plum Hollow Golf Club*, 429 Mich. 178, 413 N.W.2d 17 (1987); *Herrly v. Muzik*, 374 N.W.2d 275 (Minn.1985), *reh'g denied; Thoring v. Bottonsek*, 350 N.W.2d 586 (N.D.1984). However, a number of these jurisdictions have now abrogated the common law rule of nonliability for a liquor vendor and recognize that liability may be imposed upon the vendor or other person furnishing alcoholic beverages in favor of the injured, innocent third party. *See Lewis v. State*, 256 N.W.2d 181 (Iowa 1977); *Thaut v. Finley*, 50 Mich.App. 611, 213 N.W.2d 820 (1973); *Trail v. Christian*, 298 Minn. 101, 213

N.W.2d 618 (1973); and *Sorensen by Kerscher v. Jarvis*, 119 Wis.2d 627, 350 N.W.2d 108 (1984).

The development of civil liability for the illegal sale of alcoholic beverages in Wisconsin is vastly different from North Dakota. Prior to 1981, Wisconsin had a dram shop statute that provided a right of action in favor of any person injured by, or in consequence of, the intoxication of a minor or habitual drunkard, against any person who illegally transferred the intoxicating liquors, thereby causing the intoxication of the minor or habitual drunkard. *See* Wis. Stat.Ann. § 176.35 (West 1935). This Dram Shop Act was repealed by 1981 Wis.Laws ch. 79, § 11, eff. July 1, 1982, and recodified in chapter 125. Section 125.035(2), Wis.Stat.Ann. now provides that "[a] person is immune from civil liability arising out of the act of procuring alcohol beverages for or selling, dispensing or giving away alcohol beverages to another person."

In *Sorensen by Kerscher v. Jarvis, supra*, 350 N.W.2d at 118, the Wisconsin Supreme Court overruled its prior inconsistent caselaw and held that:

"[W]here there is sufficient proof at trial, a vendor who negligently supplies intoxicating beverages to a minor and the intoxicants so furnished cause the minor to be intoxicated or cause the minor's driving ability to be impaired shall be liable to third persons in the proportion that the negligence in selling the beverage was a substantial factor in causing the accident or injuries as determined under the rules of comparative negligence."

**9.** *See Wendelin v. Russell*, 259 Iowa 1152, 147 N.W.2d 188, 192 (1966); overruled on other grounds by *Lewis v. State*, 256 N.W.2d 181, 189 (Iowa 1977). In allowing an action to be brought by plaintiff-administrator by reason of the death of her husband, the court stated:

"[I]t is evident the subject act should be construed liberally to aid in suppressing the mischief and advance the remedial objective which prompted its enactment.

\*   \*   \*   \*   \*   \*

"Section 123.95 . . . was designed to place a hand of restraint upon those licensed or permitted by law to sell or supply intoxicants to others and protect the public, but above all to provide an avenue of relief to those offended who had no recourse or right of action under the common law." [Cites omitted.]

when faced with the issue of complicity, makes no reference to such a liberal construction, claiming that "a person who participates in the drinking activities is not an innocent person entitled to protection under the dramshop act." *Berge v. Harris*, 170 N.W.2d 621, 625 (Iowa 1969).[10] Michigan also professes to broadly interpret its dram shop statute,[11] but has not extended a right of action to the intoxicated person himself

or to those who contributed to his intoxication.[12]

Minnesota has determined that civil damage acts, "although penal in nature, are also remedial in character and, according to the prevailing view, are to be liberally construed *so as to suppress the mischief and advance the remedy.*" [Emphasis theirs.] *Hahn v. City of Ortonville*, 238 Minn. 428, 436, 57 N.W.2d 254, 261 (1953).[13] How-

In holding that a widow's workmen's compensation claim settlement did not bar recovery under the dram shop statutes, the court in *Rigby v. Eastman*, 217 N.W.2d 604, 608 (Iowa 1974), said that "[t]hese statutes should be liberally construed to aid in suppressing the mischief of serving an excessive amount of liquor to a patron."

**10.** *See also Martin v. Heddinger, supra,* 373 N.W. 2d at 489 (Iowa 1985) (reiterating the reasons for recognition of the defense of complicity in tort actions involving intoxication).

**11.** *See La Blue v. Specker,* 358 Mich. 558, 100 N.W.2d 445, 450 (1960). In allowing an illegitimate child whose alleged father was killed in an automobile accident because of the alleged illegal sale of intoxicants to the alleged father, and who was born after the accident, to bring an action to recover damages under the dram shop statute, the court cited *Eddy v. Courtright,* 91 Mich. 264, 267, 51 N.W. 887, quoting as follows:

"This court has always construed this statute liberally, and has not deemed that the true legislative intent was to be ascertained by any strained or narrow construction of the words employed."

*See also Podbielski v. Argyle Bowl, Inc.,* 392 Mich. 380, 220 N.W.2d 397 (1974) (liberally construing statute and holding that the Dram Shop Act allows recovery for loss of love, affection and companionship).

**12.** *See McDaniel v. Crapo,* 326 Mich. 555, 40 N.W.2d 724 (1950). The court in *McDaniel* relied on *Morton v. Roth,* 189 Mich. 198, 155 N.W. 459 (1915), as supporting its statement that "[t]he intoxicated person himself and those who contributed to his intoxication have no right of action." *McDaniel,* 40 N.W.2d at 725. The court in *Morton* in turn relied upon *Rosecrants v. Shoemaker,* 60 Mich. 4, 26 N.W. 794 (1886) as supporting its decision that a person who furnishes liquor to a minor and is subsequently injured in a car accident caused by the minor has no right of action under the dram shop laws.

In *Rosecrants,* a wife sued a saloon-keeper for furnishing her husband with intoxicating liquors, making him drunk, in which condition he was killed. The defendants asked the trial court to instruct the jury that "[i]f the jury find that, for her husband's use, as a beverage, the

plaintiff was in the habit of purchasing of defendants intoxicating liquors by the bottle, they may consider that as evidence for the purpose of determining whether she authorized him to sell her husband liquor or not." *Rosecrants,* 26 N.W. at 794. The trial court refused the request and the defendants appealed. The Michigan Supreme Court held that such refusal was error, stating that:

"As the wife sues solely in her own behalf, it is evident that she cannot complain of any evil which she herself has caused, and that, if she encouraged or requested the sale of liquor to her husband, she does not stand on the footing of an innocent injured party. The request seems to have assumed that, if the husband was drunk when defendants furnished him liquor, the action might be for damages, and upon this we need not dwell. But the charge, as requested, was correct; and the jury certainly should have been allowed to consider the habitual purchase by plaintiff as bearing on her willingness to let her husband have liquor." *Id.* at 795.

It appears that this language in *Rosecrants* provides the basis for Michigan's recognition of the complicity doctrine. *See Kangas v. Suchorski, supra,* 126 N.W.2d at 803; *Todd v. Biglow,* 51 Mich.App. 346, 214 N.W.2d 733 (1974); *Barrett v. Campbell,* 131 Mich.App. 552, 345 N.W.2d 614 (1983); and *Plamondon v. Matthews,* 148 Mich.App. 737, 385 N.W.2d 273 (1985).

**13.** In *Village of Brooten v. Cudahy Packing Co.,* 291 F.2d 284 (8th Cir.1961), the Eighth Circuit Court of Appeals was faced with determining whether or not an intoxicated buyer's employer and liability insurer could recover from the illegal seller of intoxicating liquor under Minnesota law and had to initially decide how the Minnesota court would construe its dram shop statute under such circumstances. In order to make such a decision, the Eighth Circuit cited the cases up to that point in which Minnesota had construed its dram shop statute. The construction applied by the court varied from case to case, prompting the Eighth Circuit to note that:

"These differing descriptions naturally present some element of confusion as to the Minnesota court's basic attitude toward the Act. [Footnote to 42 Minn.L.Rev. 298, 300

ever, the Minnesota court reasons that "[b]arring recovery by a wrongdoer by holding that the wrongdoer is not among those persons to whom the legislature intended to provide a remedy advances those dual purposes." *Martinson v. Monticello Municipal Liquors*, 297 Minn. 48, 209 N.W.2d 902, 906 (1973). The court decided in *Turk v. Long Branch Saloon Inc., supra*, 159 N.W.2d at 907, that "one who knowingly and actively participates in events leading to the intoxication of a minor has no right of action under [the dram shop statute] for recovery of damages caused by the intoxication thus produced." [14] Minnesota has subsequently held that the complicity defense is applicable where the claimant and the intoxicated person, both adults, bought "rounds" for each other, taking turns paying for each round.

*Martinson v. Monticello Municipal Liquors, supra*, 209 N.W.2d at 906. [15]

Illinois asserts that its dram shop statute "is to be liberally construed to protect the health, safety, and welfare of the people from the dangers of traffic in liquor." *Nelson v. Araiza, supra*, 14 Ill.Dec. at 442, 372 N.E.2d at 638. However, Illinois has recognized the complicity doctrine for well over one hundred years. *See Reget v. Bell*, 77 Ill. 593 (1875) (wife who did not take a jug of liquor away from her husband and thereby save his life was precluded from recovering under the Act). The Illinois courts' construction of their dram shop statute is not persuasive of the interpretation of the North Dakota Dram Shop Act as the statutes are distinguishable and the evolution of the case law has been of a

---

(1957)]. We suspect, however, that the inconsistency of characterization is more apparent than real and that the ostensible difference in expression has been due to the nature of the issue before the court ... in the particular case."
The Eighth Circuit applied the liberal construction from *Hahn*, and quoted in the text above at page 159, in determining that, under Minnesota law, the employer and insurer could recover from the illegal seller.

**14.** In *Turk v. Long Branch Saloon, Inc., supra*, 159 N.W.2d at 905, the plaintiff, an adult, had been drinking with several companions, including one he knew to be a minor, for at least 6 hours, each occasionally paying for a round of drinks. The plaintiff apparently had more money than the others, and the court thought it probable that he bought more than his share. The intoxicated minor, while taking one of the group to his home, collided with a parked car, resulting in plaintiff's injuries. In deciding that the plaintiff's active participation in the minor's intoxication barred his recovery under the dram shop statute, the court stated:

"[A] person who buys drinks for an obviously intoxicated person, or one whom he knows to be a minor, is at least as much the cause of the resulting or continued intoxication as the bartender who served the consumer illegally.... [H]aving declared that the person who becomes intoxicated as a result of illegal sale, barter, or gift cannot recover, how can we reasonably attribute to the legislature an intent to allow recovery to the participating accessory who, in some cases at least, may be as much or more responsible for the violation of the liquor laws than the one who consumes the intoxicant? The concessions sometimes made to minors because of presumed imma-

turity cannot run in favor of the adult who, knowing the age of his companion, accompanies him to a bar and, implicitly representing that all are of age, purchases the drinks that cause the intoxication." *Turk, supra*, 159 N.W.2d at 906.
Actually, what *Turk* involves is an attempt by an adult who purchased most of the liquor that was consumed by minors to recover damages under the Minnesota Dram Shop Act. Those are not the circumstances of this case. In the instant case there has been no contribution to the delinquence of a minor.

**15.** After having determined in *Turk* that, under certain circumstances, complicity would bar recovery under the dram shop statute, the Minnesota court gradually expanded the doctrine. *See Hempstead v. Minneapolis Sheraton Corp.*, 283 Minn. 1, 166 N.W.2d 95 (1969) (no such complicity as to bar recovery as long as the party seeking to recover has not procured or in other ways furnished liquor to the person who becomes intoxicated, but is simply a companion); *Heveron v. Village of Belgrade*, 288 Minn. 395, 181 N.W.2d 692 (1970) (those who voluntarily and affirmatively participate in inducing the intoxication of a person in violation of the penal statute prohibiting "any person" from furnishing intoxicating liquor to a minor encounter the risk of nonliability of the licensed dealer, whose liability to "innocent" third parties remains intact); *Martinson v. Monticello Municipal Liquors, supra*, 209 N.W.2d at 902 (the complicity defense applies as well where adult drinking companions take turns buying each other "rounds"); and *Herrly v. Muzik, supra*, 374 N.W. 2d at 275 (after Minnesota had enacted a comparative negligence law and the dram shop statute had been amended to include a reference to that law, the court decided that notwithstanding

different emphasis: (1) Illinois does not require that the transfer of alcoholic beverages be illegal;[16] and (2) Illinois seems to make the cause requirement more stringent in recent cases.[17]

We recognize that the majority of jurisdictions that have considered the issue of complicity as a defense to a dram shop action, including those previously discussed, have ruled that complicity is a complete bar to recovery. Annot. 26 A.L.R.3d 1112 (1969). The courts which find complicity when bar patrons take turns in paying for the liquor speak in terms similar to the Michigan Court of Appeals in *Goss v. Richmond*, 146 Mich.App. 610, 381 N.W.2d 776 (1985). The court stated:

"The objective of the Legislature in enacting the dramshop act was to discourage bars from selling intoxicating liquors to visibly intoxicated persons and minors and to provide for recovery under certain circumstances by those injured as a result of the sale of intoxicating liquor. *Browder v. International Fidelity Ins. Co.*, 413 Mich. 603, 611–612, 321 N.W.2d 668 (1982). To permit one who has been an intentional accessory to the illegality to shift the loss resulting from it to the tavern owner would lead to a result we believe the Legislature did not intend. A person who buys drinks for an obviously intoxicated person, or one whom he knows to be a minor, is at least as much the cause of the resulting or continued intoxication as the bartender who served

the consumer illegally. In short, barring recovery by a wrongdoer by holding that the wrongdoer is not among those to whom the Legislature intended to provide a remedy advances both purposes of the act, to suppress illegal sales and to provide a remedy for those injured as a result of the illegality." *Id.* 381 N.W.2d at 776.

Although the writer of this opinion cannot speak from great personal experience, it is believed that it is the accepted practice of those who find sociability in taverns, bars, nightclubs, and restaurants that serve alcoholic beverages, to take turns purchasing those drinks. That being the likely and customary practice it would seem to defeat the objective of the Dram Shop Act, which is to prevent sales to intoxicated persons and the attendant disastrous consequences of such sales, if sales under such accepted customary practices were exempt from the provisions of the Act. Presumably, the dram shop merchant is refraining from imbibing alcohol while engaging in the business of selling and dispensing alcoholic beverages and thus is in a much better position to know when the imbibers have become intoxicated than the imbibers themselves.[18]

For the reasons stated in this opinion, the summary judgment dismissing Aanenson's complaint is reversed and the case is remanded for further proceedings with costs on appeal to Aanenson.[19]

the adoption of comparative negligence, complicity acts as a complete bar to recovery).

16. *See* footnote 7 for the text of the Illinois Dram Shop Act. Compare to sections 5–01–06 and 5–01–09, N.D.C.C., on text page 3.

17. In *Nelson v. Araiza, supra,* 14 Ill.Dec. at 443, 372 N.E.2d at 639, the court noted that the "defendant must have caused the intoxication and not merely have furnished a negligible amount of liquor. *Thompson v. Tranberg* (1977), 45 Ill.App.3d 809, 811, 4 Ill.Dec. 361, 360 N.E.2d 108; *Caruso v. Kazense* (1974), 20 Ill. App.3d 695, 697, 313 N.E.2d 689."

18. It is interesting to note that although the legislature in 1987 made significant changes in the law (see footnote 1), it did not change the "or other person" language, nor did it specifically exclude as beneficiaries of the Dram Shop Act, drinking companions who are not passen-

gers in the vehicle driven by the intoxicated person.

19. While not significant for this case, it is noted that in 1987 the legislature enacted a new comparative fault statute. Section 32–03.2–02, N.D. C.C., effective July 8, 1987, provides in pertinent part:

"*Modified comparative fault.* Contributory fault does not bar recovery in an action by any person to recover damages for death or injury to person or property unless the fault was as great as the combined fault of all persons who contribute to the injury, but any damages allowed must be diminished in proportion to the amount of contributing fault attributable to the person recovering.... Under this section, fault includes negligence, malpractice, absolute liability, dram shop liability, failure to warn, reckless or willful conduct, assumption of risk, misuse of product, and failure to avoid injury."

GIERKE and LEVINE, JJ., concur.

MESCHKE, J., concurs in the result.

VANDE WALLE, J., concurs in result and files an opinion.

VANDE WALLE, Justice, concurring in result.

Because this is an appeal from a summary judgment I concur in the result reached in the majority opinion. Under the circumstances of this case I agree with much of the rationale contained in the majority opinion. However, I would leave for another day the issue of whether or not complicity can ever constitute a defense to a dramshop action in North Dakota. Under different circumstances we might be hard pressed to hold, as a matter of law, that complicity can never constitute a defense. Indeed, public policy might dictate a different result under different circumstances.